DAVID SMITH, on Behalf of Himself as a Taxpayer and on Behalf of All Other Taxpayers of the Virgin Islands,

v.

THE GOVERNMENT OF THE VIRGIN ISLANDS, MARIO LEWIS as Commissioner of Property and Procurement, and STEADMAN HODGE

Government of the Virgin Islands and Mario Lewis, Commissioner of Property and Procurement, Appellants

## No. 15,443

## United States Court of Appeals

### Third Circuit

## Argued January 31, 1967

## Filed March 23, 1967

*See, also, 375 F.2d 714*

PETER J. O'DEA, ESQ., Assistant Attorney General, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellants*

HARRY DREIS, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellees*

Before STALEY, *Chief Judge*, FREEDMAN and COFFIN,* *Circuit Judges*

FREEDMAN, *Circuit Judge*

## OPINION OF THE COURT

This appeal raises the important question of the power of the Legislature of the Virgin Islands to authorize the private sale to a designated grantee of a specific plot of land owned by the Government of the Virgin Islands.

In 1961 a plot of land, consisting of 1,010 square feet, at Domini Gade No. 8T, St. Thomas, was escheated to the Government of the Virgin Islands pursuant to a judgment entered by the district court. A few months later the Legislature passed and the Governor approved Act No. 876, which authorized the Governor to transfer the plot to the Department of Property and Procurement "for sale at a reasonable price to Mr. Steadman Hodge, to be used solely for construction of a home thereon." The Governor transferred the property to the Department for sale to Mr. Hodge and the Commissioner of Property and Procurement by deed granted and conveyed it to Mr. Hodge on June 8, 1962 for the sum of $200. The deed recited that the Commissioner had determined that $200 was the reasonable price for the property.

Shortly thereafter plaintiff brought suit on his own behalf as a taxpayer and on behalf of all other taxpayers of the Virgin Islands against the Government of the Virgin Islands, the Commissioner of Property and Procurement and Hodge, to have the sale set aside on the grounds that Act No. 876 was invalid, that the purchase price paid was not a "reasonable price" as required by the Act and

---

* Of the First Circuit sitting by designation.

that the property could only be sold at public, judicial sale under the escheat provision of Title 15, § 126 of the Virgin Islands Code. The district court dismissed the action for lack of capacity of plaintiff to maintain it as a taxpayer. We reversed the dismissal in Smith v. Government of the Virgin Islands, 4 V.I. 489, 329 F.2d 131 (3 Cir. 1964), and held that plaintiff[1] was qualified to bring the action because there was no requirement that a taxpayer must show his liability for any minimum amount of taxes either in absolute terms or in relation to the amount of the property involved in the suit, or to show any special damage to himself different in character from that suffered by the general body of taxpayers.[2]

The case then proceeded to trial and the court below entered judgment declaring the conveyance to be void. Smith v. Government of the Virgin Islands, 5 V.I. 124, 240 F. Supp. 809 (D.V.I. 1965). From this judgment the defendants have taken this appeal.

Act No. 876 is a special as well as a private law, for it arbitrarily authorizes the transfer of a plot of land to a designated individual, and excludes all others who might wish to buy it.[3] We must determine the effect of two of the prohibitions on special laws laid down in 48 U.S.C. § 1471 (Act of July 30, 1886, ch. 818, § 1, 24 Stat. 170). That section creates an absolute bar against special legislation in any of twenty-four enumerated cases, among these, the "granting to any ... individual [of] any special or exclusive privilege ... whatever." The section further

---

[1] Until that stage of the suit there were two plaintiffs, Smith and one Gross. Later, after Gross' death, the action, which was carried on by Gross' executor, was dismissed as to him.

[2] 5 V.I. Code § 80 provides: "A taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds."

[3] City of Bayonne v. Palmer, 90 N.J. Super. 245, 283–84, 217 A.2d 141, 162, aff'd, 47 N.J. 520, 221 A.2d 741 (1966); Wheeler v. Philadelphia, 77 Pa. 338, 348 (1875); see 2 Sutherland, Statutory Construction (3d ed. 1943), §§ 3202–3.

provides: "In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial legislature thereof."[4]

The Act of 1886 from which § 1471 is derived was taken from the Constitution of Illinois[5] and was meant to be co-extensive with it.[6] Similar prohibitions against special laws are common in state constitutions.[7] In Illinois, as in other states, the prohibition against the granting of any special or exclusive privilege to any individual has been interpreted as intended to prevent "the enlargement of the rights of one or more persons in discrimination against the rights of others,"[8] and protects any right which is a subject of state legislation.[9] Legislation focused even less narrowly than Act No. 876 has therefore been stricken down in Illinois and in other states. A few cases will illustrate the operation of the principle. In Harvey v. Clyde Park District, 32 Ill. 2d 60, 203 N.E.2d 573 (1965), the Supreme Court of Illinois held that a statute granting the Park District immunity from liability for negligence violated the constitutional provision because it arbitrarily and unconstitutionally discriminated against the plaintiff. Viewing the statute by its effect on individuals who were

---

[4] "The legislatures of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say: [here follow 23 enumerated cases]

"Granting to any corporation, association, or individual any special or exclusive privilege, immunity or franchise whatever.

"In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial legislatures thereof."

[5] Const. of 1870, Art. IV, § 22.

[6] See 17 Cong. Rec. 4062, 49th Cong., 1st Sess. (1886), remarks of Mr. Springer, who introduced the bill.

[7] See generally, 2 Sutherland, Statutory Construction (3d ed. 1943); §§ 2101-25.

[8] See, e.g., Harvey v. Clyde Park District, 32 Ill.2d 60, 65, 203 N.E.2d 573, 576 (1965); People ex rel. Heydenreich v. Lyons, 374 Ill. 557, 30 N.E.2d 46 (1940); Joseph Triner Corp. v. McNeil, 363 Ill. 559, 2 N.E.2d 929 (1936), aff'd, 299 U.S. 183 (1936).

[9] Jones v. Chicago, R.I. § P. Ry. Co., 231 Ill. 302, 306, 83 N.E. 215, 216 (1907).

injured by the negligence of government agencies the Court said there was no reason why one who was injured by a Park District truck should be barred from recovery while one who was injured by a city truck should be allowed to recover. To the extent that recovery was permitted or denied on such an arbitrary basis, a special privilege was granted in violation of the constitutional prohibition. In Cox v. State, 134 Neb. 751, 279 N.W. 482 (1938), the Supreme Court of Nebraska held invalid as a special law a private bill which waived for the plaintiff alone the sovereign immunity of the state, enabling him to recover damages for the negligence of the state's agents. The Court indicated that in according preferred status to plaintiff the bill made an unreasonable distinction between him and similarly situated citizens whose recovery for similar injuries would be barred. In Bentley v. Commonwealth ex rel. State Board of Dental Examiners, 239 S.W.2d 991 (Ky. 1951), a resolution of the state legislature which authorized a named individual to practice dentistry as if he had been duly licensed and directed the State Board of Dental Examiners to issue a license to him was held void as special legislation. In Clark v. Meade, 377 Pa. 150, 104 A.2d 465 (1954), it was held that a statute which removed some offices of the city government from the civil service requirements and the ban on political activity of its home rule charter, leaving under civil service and barred from political activity the employees of all other city offices who were engaged in similar work, violated Article III, § 7, of the Constitution of Pennsylvania which is similar to § 1471 and contains a like prohibition against the passage of any local or special law granting to any individual any special or exclusive privilege or immunity.[10]

■ Act No. 876 singled out Hodge from all other citizens and discriminated against them by granting to him

---

[10] See also Schultz v. Philadelphia, 385 Pa. 79, 86, 122 A.2d 279, 283 (1956).

an exclusive privilege to acquire the parcel of land. This arbitrary action violated the specific prohibition of § 1471 against the passage of a special law "granting to any . . . individual any special or exclusive privilege . . . whatever."

▉ Act No. 876 also violates the prohibition in § 1471 against the enactment of a special law "where a general law can be made applicable." Such a general law already existed when Act No. 876 was enacted. This was the escheat law (15 V.I. Code § 126) which prescribes in detail the procedure for the sale of property which has been escheated to the Government of the Virgin Islands. It requires public sale by the marshal after notice prescribed by the court, ultimate judicial confirmation of the sale and conveyance of the property to the purchaser by the marshal. It provides for the vacation of a sale if the bids received are disproportionate to the value of the property and if it appears to the court that on a resale a higher price can be obtained which would exceed the successful bid by at least ten percent, exclusive of the expenses of a new sale.

While legislative action presumptively is proper,[11] Act No. 876 clearly is without any reasonable foundation and therefore is arbitrary and invalid on its face. It is a special law for the sale of a specific parcel of real estate to a designated individual, adopted at a time when, under 15 V.I. Code § 126, a general law existed for the sale of government property.

▉ Appellants contend, however, that § 1471 is inapplicable to the Virgin Islands because it deals with the legislatures of territories "now or hereafter to be organized." While the Virgin Islands constitute an "unincorporated" territory, it does not follow from this that they are also

---

[11] See generally, 2 Sutherland, Statutory Construction (3d ed. 1943), § 2103. The dictum of Guthrie National Bank v. Guthrie, 173 U.S. 528, 533 (1899), does not specifically make the judgment of the legislature conclusive.

143

an "unorganized" territory. The question whether a territory is "incorporated" into the United States did not exist when § 1471 was adopted. It originated later in the problems which arose from the territorial acquisitions by the United States after the Treaty of Paris in 1899 following the Spanish-American War. The distinction originated with Mr. Justice White in one of the Insular Cases,[12] which dealt with the difficult problem of the extent to which the guarantees of the Constitution of the United States applied in the newly acquired territories. See generally, Coudert, The Evolution of the Doctrine of Territorial Incorporation, 26 Colum. L. Rev. 823 (1926).

■ The continuing significance of the incorporation of a territory was summarized by Chief Justice Taft in Balzac v. People of Puerto Rico, 258 U.S. 298, 311 (1922): "Incorporation has always been a step, and an important one, leading to statehood." Congress therefore has been careful to bestow incorporation only when it has already determined that the territory is destined for statehood. In adopting the Revised Organic Act of the Virgin Islands in 1954 Congress made it clear that although it was providing a detailed frame of government for the Islands this was not to be taken as an indication that it had destined the territory for statehood. It therefore expressly declared in § 2(b) of the Act that the Virgin Islands are an "unincorporated territory of the United States of America."[13]

■ The status of the Virgin Islands as an "unincorporated" territory has no relevance, however, to the prohibition in § 1471 against special legislation in territories "now or hereafter to be organized." The legislative history of § 1471 shows that Congress recognized that the evils of

---

[12] Downes v. Bidwell, 182 U.S. 244, 287 (1901), concurring opinion.

[13] The Senate Report accompanying the bill made it clear that by this provision Congress expressed its view that the Virgin Islands were not as yet destined for statehood. See 2 U.S. Code Cong. and Admin. News (S. Rep. 1271, 83d Cong., 2d Sess. 1954), pp. 2592–93.

special legislation, which had been overcome in most of the states of the Union by constitutional prohibitions, had become rampant in the territories. It was to eliminate these evils in the territories that § 1471 was adopted.[14] There is no indication that Congress wished to limit the force of its provisions to a select group of territories, and its reference to "organized" territories referred only to the stage at which it had prescribed a system of government for a territory. Under this test, the Virgin Islands had clearly reached the stage of an "organized" territory by 1936.

When the United States acquired the Virgin Islands from Denmark, Congress adopted the Act of March 3, 1917 (ch. 171, 39 Stat. 1132, 1 V.I. Code Annot. LVII [39]), which, as its title declares, merely provided a "temporary

---

[14] Thus, Mr. Springer who introduced the bill, which became § 1471, explained:

"The bill simply prohibits the passage, in the cases enumerated of local or special laws in the Territories. I think one of the greatest abuses in the Territories has been the passage of laws of this character. This bill, if passed, will require general laws on these subjects instead of special ones. The subject has been discussed in most of our States in the formation of our State constitutions, and wherever provisions of this kind have been adopted the most salutary results have followed. I think the same benefits should be extended to the Territories." 17 Cong. Rec. 4062, 49th Cong., 1st Sess. (1886).

The House Report is to the same effect: "The bill simply enacts one of the provisions of the constitution of many of the States of the Union prohibiting the passage of local or special laws, and makes this provision applicable to the Territories of the United States.

. "The evils of special and local legislation have nowhere been more apparent and destructive of good government than in our Territories. The greater portion of all their legislative enactments have been local or special, and but few general laws have been passed. The States which have prohibited special or local legislation have reaped great benefit therefrom. The corrupting and demoralizing influences of local and class legislation are now universally admitted. The necessity of prohibiting such legislation in our Territories is apparent to all who have given the subject serious consideration." H.R. Rep. 1477, 49th Cong., 1st Sess. (1886), p. 1.

Similarly S.Rep. 1327, 49th Cong., 1st Sess. (1886), p. 1 states:

"This bill was intended to throw about the legislation of the general assemblies of the Territories one of the safeguards against improper legislation which is found in the constitutions of most of the States.

"There is now general concurrence in the opinion that special legislation, in all cases where general laws can be made applicable, should be prohibited. Some of our Territories have now become so populous and worthy, so full of commercial and business enterprise, that the necessity of imposing such limitations upon the power of the Territorial assemblies as are found in the best constitutions of the States seem to be imperative in order to protect the people against unwise and hasty legislation."

government" for the Virgin Islands in which the local laws in effect on January 17, 1917 were to continue in effect in so far as they were "compatible with the changed sovereignty," until Congress should otherwise provide. Section 1 of the Act vested "all military, civil, and judicial powers necessary to govern the West Indian Islands acquired from Denmark ... in a governor and in such person or persons as the President may appoint ... until Congress shall provide for the government of said Islands." Under that statute the Virgin Islands were an unorganized territory; Congress had not established for them a formal or detailed plan of government, but had adopted a stopgap arrangement for them.[15]

A later congressional report describes how after the Act of 1917 "the Virgin Islands were under the administration of the Navy, and were governed by a naval governor with the advice and help of local colonial councils which had been established by the Danes. In 1931 President Herbert Hoover transferred the administrative responsibility for the Virgin Islands from the Navy to the Department of the Interior, and a civilian governor ... was appointed."[16]

█ █ In 1936 the status of the Government of the Virgin Islands was drastically altered when Congress adopted the Organic Act for the Virgin Islands.[17] Its title describes its purpose: "An Act To provide a civil government for the Virgin Islands of the United States." A decade and a half later, Congress adopted the Revised Organic Act of the Virgin Islands.[18] It makes more detailed

---

[15] This was recognized when the bill was under consideration, in the statements by the floor manager of the bill, Congressman Flood. 54 Cong. Rec. 3649, — Cong., — Sess. (1917): "[T]hese islands do not constitute organized Territories."

[16] 2 U.S. Code Cong. and Admin. News (S.Rep. 1271, 83d Cong., 2d Sess. 1954), p. 2587.

[17] Act of June 22, 1936, ch. 699, 49 Stat. 1807, 1 V.I. Code Annot. LXIII [45].

[18] Act of July 22, 1954, ch. 558, 68 Stat. 497, 1 V.I. Code Annot. XCIX [85].

provisions for the government of the islands, with executive, legislative and judicial branches, than had been provided in the Organic Act of 1936. Provision was also made for the adoption by the Legislature of the Virgin Islands of a code of laws whose preparation was to be arranged for by the Secretary of the Interior at federal expense. Subject to the power of Congress to annul any act, the territorial legislature was given general power to adopt civil or criminal laws, so long as they were not inconsistent with any law of the United States applicable to the Virgin Islands.

▆ There can be no doubt that at least since the detailed provision for the organization of a government of the Virgin Islands by the Organic Act in 1936 and the Revised Organic Act in 1954, the Virgin Islands constitute an organized territory. They therefore are subject to all the provisions of § 1471, which apply not only to territories already organized, but equally to territories which are organized at any time after § 1471 was enacted.

Soto v. United States, 1 V.I. 536, 273 Fed. 628 (3 Cir. 1921), cited by appellants, indicates nothing to the contrary. We there held that a murder trial conducted in 1920 was required to observe due process of law even though the Islands were not incorporated territories, because the Act of 1917 authorized the continuance of the existing local law only to the extent that it was "compatible with the changed sovereignty." We therefore reversed two judgments of conviction because the Danish procedure which had been followed did not provide to the defendants the right to confront and cross-examine the witnesses against them. The question whether the Virgin Islands were at that time an organized or unorganized territory was not relevant to the issue, and was not discussed, although the facts indicate the extent to which criminal proceedings were governed in 1920 by the local Danish law and graphically depict the

status of the Virgin Islands at that time as an unorganized territory.

Since the Virgin Islands are now an organized territory, all the provisions of § 1471 are fully applicable to them. The difference between the reference to organized territories in the enumeration of cases of local or special laws and the broader language of the final provision that where a general law can be made applicable no special law shall be enacted "in any of the territories of the United States," has no significance in the Virgin Islands, whatever effect the final provision may have in territories which are not organized.

 Appellants attack paragraph 4 of the amended judgment on the ground that although the Attorney General was not joined as a party it nevertheless directs him to move for an order for the sale of the property under 15 V.I. Code § 126 in the event that the Government of the Virgin Islands desires to sell it.[19] Paragraph 4 of the amended decree does not order any action to be taken by the Attorney General; it merely describes the statutory procedure which is to be followed if the escheated property is to be sold. It is not the judicial imposition of a duty but rather the judicial recognition of a duty which the statute has imposed on the Attorney General. Since the Attorney General was not treated as a party he need not have been joined as such and was not an indispensable party under Rule 19.

Concluding as we do that Act No. 876 is invalid, we need not decide whether there was such a lack of evidence as to make clearly erroneous under Rule 52(a) the finding of the district judge that the purchase price of $200 was not "a reasonable price" as required by Act No. 876, or the

---

[19] Although the general escheat law names the United States Attorney as the party who is to make such motion, the function of the United States Attorney has been transferred to the Attorney General by 3 V.I. Code § 114(6).

effect of appellee's claim that he had offered to pay a much higher price. Any sale of the property will be held under the provisions of the escheat law, which requires a public sale on competitive bidding.

The judgment of the district court will be affirmed.

