**ALFRED B. HAYES and WILLIAM F. CALLAHAN,**

Plaintiffs

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, JOHN E. HARDING,**

Commissioner of Public Works Department,

Defendants

Civil No. 1972-354

District Court of the Virgin Islands

Div. of St. Croix

March 3, 1975

*Reaffirmed, on Motion to Reconsider, April 24, 1975*

409

411

NICHOLS & SILVERLIGHT, ESQS. (JOHN B. NICHOLS of counsel), Christiansted, St. Croix, V.I., *for plaintiffs*

O. S. MINGUS, ESQ., Assistant Attorney General, Christiansted, St. Croix, V.I., *for defendants*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND JUDGMENT

### I

### BACKGROUND FACTS

A court trial in this matter was held before me on February 19, 1975. Plaintiffs, joint owners of Plot No. 36 of Estate St. John, St. Croix, brought this action to determine adverse claims to a road running from the northwestern to the northeastern corner of their property. In June, 1972, defendant Government of the Virgin Islands, through the Department of Public Works, surfaced the road without plaintiffs' consent. In remedy of the alleged trespass, plaintiffs have demanded damages not only for the area of land on which the road is situated but also for the diminution in value of the plot. In the alternative, plaintiffs have sought removal of said road and damages equal to the cost of restoring the property to its former state.

The United States Government became owner of the land on which the aforementioned road is today located pur-

suant to a deed executed between it and one Kai Esmann on December 19, 1935. On May 20, 1947, the United States, acting through the Administrator of the Farmers Home Administration, transferred various public roads, water systems and community facilities via a quitclaim deed to the Municipality of St. Croix. In accordance with the terms of the deed, the Municipality was granted all the Federal Government's right, title and interest in "[a]ll of the public roads shown on . . . Map dated March 13, 1947, entitled Revised Subdivision Map of Estates La Grande Princesse and Parcel of St. John. . . ." On July 28, 1959, by various provisions of the Virgin Islands Corporation Act of 1949, notice was given that effective June 30, 1949, title to described real property was transferred from the United States to the Virgin Islands Corporation. Included in the transfer was Plot No. 36 of Estate St. John, designated the St. Croix abattoir. The Virgin Islands Corporation in turn quitclaimed Plot No. 36 to plaintiffs Hayes and Callahan on July 18, 1963.

Briefly stated, the Virgin Islands Government claims that 43 U.S.C. § 932 has placed the road running across plaintiffs' property in the public domain; that when the plaintiffs took title to the land in 1963, they took subject to the public's interest in the road; and, consequently, the Government of the Virgin Islands could properly surface the road without plaintiffs' consent.

II

APPLICABILITY OF 43 U.S.C. § 932 TO
THE VIRGIN ISLANDS

Initially, plaintiffs argue that the Third Circuit's opinion in Virgo Corp. v. Paiewonsky, 6 V.I. 256 (3d Cir. 1967), would prohibit this Court from applying Section 932 in the absence of language in the statute making it expressly referable to the Virgin Islands. I cannot agree. Virgo merely

reiterates Section 8(a) of the Revised Organic Act of 1954, which extends the legislative power of the Territory to all rightful subjects not inconsistent with the Organic Act or Federal laws made applicable to the Virgin Islands. Id. at 274. The primary concern, then, of the Revised Organic Act was to remove the restrictions placed upon the local legislature by the 1936 Act. Id. at 272. It does not necessarily follow from the foregoing that limitations upon the applicability of Federal statutes to the Virgin Islands were intended by the Revised Act.

However cumbersome a statute by statute analysis might be, it is evident that the determination of whether the Virgin Islands are encompassed by a given congressional act inevitably depends upon the character and aim of the act. Puerto Rico v. Shell Co., 302 U.S. 253, 257–58 (1937). The general canon of construction which suggests that unless a contrary intent appears, congressional legislation is meant to apply only within the territorial jurisdiction of the United States [see Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949)], should not be applied mechanically. Instead, courts should look to the legislative intent of the Federal statute before arriving at a decision. People of Saipan v. U.S. Department of Interior, 356 F.Supp. 745, 650 (D. Hawaii 1973); see also People of Eniwetok v. Laird, 353 F.Supp. 811, 815 (D. Hawaii 1973).

In a recent decision arising out of an appeal from this Court, the Third Circuit looked to the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968, which was made expressly applicable only to prosecutions by the United States and the District of Columbia, and found that the act was intended to be law in the Virgin Islands as well. See Government of the Virgin Islands v. Gereau et al., 502 F.2d 914, 922–23 (3rd Cir. 1974). In light of the Third Circuit's implicit sanction of the procedure by which the applicability of a congressional act to

414

the Virgin Islands is tested, I now look to the legislative purpose behind 43 U.S.C. § 932.

■ The statute provides that "[t]he right of way for the construction of highways over public lands, not reserved for public uses is hereby granted". The provision recognized that by the time of its enactment in 1866 highways in large numbers had been laid out by local, state and territorial authority across public lands; and that the number of such roads had become so great that Congress was forced to conclude that they were indeed established and used with the full knowledge and acquiescence of the Federal Government. Section 932, then, was passed to protect those local authorities and persons who have encroached upon public lands without authorization but who nevertheless have been permitted to remain there with the concurrence of the government and should not be deemed trespassers. It was not intended to grant new rights but rather to give legitimacy to an existing status otherwise legally indefensible. Central Pac. R. Co. v. Alameda Co., 284 U.S. 463, 473 (1931); United States v. Dunn, 478 F.2d 443, 445 n. 2 (9th Cir. 1973).

■ It is difficult to conceive in what way the policies underlying Section 932 would be served by failing to extend its protective aegis to the Virgin Islands. The Federal Government's moral obligation to protect the public roads against destruction or impairment by subsequent grants should extend to any geographical locality, in the continental United States or otherwise, where the public has been permitted to traverse public lands with apparent acquiescence by the Federal Government. Given the large areas of land in these islands heretofore and presently owned and controlled by the Federal Government, the underlying policies of Section 932 would appear to be best served by its application here.

Other indicia in Title 43 point to the applicability of

right-of-way statutes to the territories of the United States. It has been recognized, for example, that Section 932 is controlled by the same general principles as those embraced by a companion section of the same act, which relates to ditches and canals on the public domain. See Central Pac. R. Co. v. Alameda Co., supra at 469–70; United States v. Dunn, supra at 445 n. 2. Since the protection afforded by companion Section 946 expressly extends to the territories as well as to states, the absence thereof in Section 932 may be viewed as legislative oversight. Moreover, the operation of Section 932 in the territory of Alaska prior to it becoming a state has been firmly acknowledged by both District Court and local Court opinions in that jurisdiction. See Hamerly v. Denton, 359 P.2d 121, 123 (Alaska 1961), and cases cited at n. 1.

## III

### NATURE OF THE USE OF THE ROAD

■ Having established the applicability of Section 932 to these islands, I must now proceed to determine whether the substantive requirements of the statute have been met. The authorities agree that Section 932 constitutes an offer by the Federal Government to dedicate unreserved lands for highway purposes, which offer must be accepted by the public in order to become effective. See, e.g., State v. Crawford, 441 P.2d 586, 590 (Ariz. 1968). Such acceptance may take the form of either some positive act on the part of the appropriate public authority of the state clearly manifesting an intention to accept a grant [see Wilderness Society v. Morton, 479 F.2d 842, 882 (D.C. Cir. 1973), cert. denied, 411 U.S. 917 (1974)], or public use of the road for such period of time and under such conditions as to prove that the grant has been accepted. See Hamerly v. Denton, supra at 123; Lovelace v. Hightower, 168 P.2d 864, 873 (N.M. 1946).

■ I find that the Government of the Virgin Islands has met its burden of establishing dedication through public use by clear and unequivocal proof. Id. at 125. Because public use cannot be established under the statute during the period in which the land is the subject of a valid and existing homestead claim [id. at 123], my focus is necessarily narrowed to the period prior to the plaintiffs' acquisition of the property in 1963. The great preponderance of the evidence adduced at trial shows that the road has been continuously open to the public since at least 1937, when it constituted one of the access roads to the St. John's Airport located in Plot No. 35-A. During the same pre-1940 period, the road was traversed by those wishing to dip their cattle as part of the tick eradication program on St. Croix. In the decade and a half which followed, the road provided access to and from the abattoir located in Plot No. 36. Even more compelling is the fact that for the past forty years the road in question provided the only ingress into and egress out of St. John Village located in Plot No. 34. Finally, Mr. Nelthrop, Assistant Commissioner of Public Works and employee of that department for forty years, testified that the Government has actively maintained the road since 1947, and that during periods in which the North Shore Road was being repaired, the road in question was used to reroute the vehicular traffic from the major artery. All the foregoing factors, taken together, leave little doubt that the road across plaintiffs' land constitutes a "highway", as set forth in Section 932, thus satisfying the statutory requirement of public use. See, e.g., Robinson v. Faulkner, 306 A.2d 857, 861 (Conn. 1972); In re Penna. Ave., 126 A.2d 715, 718–19 (Pa. 1956). Because that public use need not be for any prescriptive period [see Lovelace v. Hightower, supra at 872], I find that the Federal Government's offer to dedicate the public road in question has been accepted by the Virgin Islands public.

# IV

## THE 1947 GRANT

██ Plaintiffs allege that the failure of the road to appear on the Revised Subdivision Map dated March 13, 1947, to which reference is made on the 1947 quitclaim deed from the Federal Government to the Municipality of St. Croix, clearly indicates that the parties never intended to include the road in the transfer. I disagree. On cross-examination, Mr. Nelthrop was asked to explain both the failure of the road to appear on the 1947 map and also why it was designated a private road on a Public Works Drawing dated March, 1937. He answered that prior to 1947, the road was maintained by the Homestead Commission; thus, for purposes of the Department of Public Works, for which the witness was employed, the road was not public insofar as it was not maintained out of public expenditure. In other words, the public/private distinction shown in the foregoing maps was more reflective of fiscal rather than legal definition.

# V

## RECORD NOTICE

██ Plaintiffs next contend that because the 1947 deed of transfer from the Federal Government to the Municipality of St. Croix, although recorded, was not indexed under Plot No. 36, they should not be imputed with knowledge of the adverse claim to the road. This contention carries the doctrine of record notice much too far. Although plaintiffs generally have a right to rely on record notice, a prospective purchaser may be charged with knowledge where the easement or right-of-way is open and visible.

"The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. Thus, where the easement is open and visible, the purchaser . . . will be charged with

418

notice, although the easement is created by a grant which was never recorded. . . . The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry." Fanti v. Welsh, 161 S.E.2d 501, 505 (W. Va. 1968) ; see also 28 CJS (Easements) § 49, at 713–14 (1941) ; 25 AM.Jur.2d (Easements) § 98, at 503–04 (2d ed. 1966).

In this instance, a reasonable inspection of the premises prior to purchase would have revealed not only the existence of the road but also the public nature thereof. By 1963, a substantial number of families inhabited St. John Village, all of whom necessarily traveled on the road traversing Plot No. 36 to and from their homes. Add to this the periodic grading and maintenance by the Public Works Department, and it is difficult to conceive of how plaintiffs were not put on inquiry as to the public nature of the right-of-way through their land.

# VI

## DAMAGES

██ ██ Having found that the dedication of the road has been perfected by public use, I must hold that plaintiffs, as subsequent transferees of the property, hold the land subject to such a reservation by the public. Myers v. United States, 210 F.Supp. 695, 700 (D. Alaska 1962), aff'd 323 F.2d 580 (9th Cir. 1963) ; see also Myers v. United States, 378 F.2d 696, 704 (Ct. Cl. 1967). Consequently, the Government of the Virgin Islands was not required to solicit the consent of plaintiffs to hard-top the right-of-way nor need it have been subjected to damages for doing so. Although some jurisdictions have held that the right-of-way may be exercised by widening or altering an existing roadway without liability [see, e.g., Myers v. United States, 378 F.2d at 704], I find that the Government in this instance has deviated from the original grant to the point where it

has caused injury to plaintiffs' property interests. According to the testimony of plaintiff Hayes, which remains uncontroverted in the record, the Department of Public Works expanded the width of the highway from approximately fifteen to thirty feet during the surfacing process. Whereas such widening in the interests of vehicular safety might be considered reasonable under some circumstances and thus non-compensable, I find that thirty feet is an excessive width in light of the location of the road and the limited two-way traffic thereon. For, when a right-of-way is granted but not defined, the privilege must be a reasonable one for the purpose for which it was created. Bishop v. Hawley, 238 P. 284, 286 (Wy. 1925). When confronting the private property interests of individuals, the Virgin Islands Government should be particularly hesitant to expand upon the rights afforded it by Section 932.

At trial, a licensed Virgin Islands real estate broker called by plaintiffs as an expert witness estimated the value of the strip of property on which the road is situated to be $5,356.00. He arrived at this sum by multiplying the area of the road (605 feet long by 30 feet wide, for an area of 0.412 U.S. acres) by the value of land per acre ($13,000.00/acre). Accepting fifteen feet, the width of the road prior to surfacing, as sufficient for right-of-way purposes in this case, only 0.206 U.S. acres can be considered a reasonable taking by the Government. Plaintiffs, therefore, are entitled to $2,678.00 in damages for the excess acreage taken up by the road.

### JUDGMENT

In accordance with the foregoing Memorandum Opinion and the reasons set forth therein, it is hereby

ORDERED, ADJUDGED and DECREED:

1. That the road running from the northwestern to the northeastern corners of plaintiffs' property in Plot No. 36,

Estate St. John, St. Croix be hereafter deemed a public right-of-way, to be properly maintained by the Government of the Virgin Islands, through the Department of Public Works; and

2. That defendant Government of the Virgin Islands not be required to remove said road nor restore the land to its prior condition; provided, however, that the Government of the Virgin Islands pay to plaintiffs the sum of $2,678.00 in damages plus costs and attorney's fees in the amount of $500.00.

---

## MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs Hayes and Callahan have moved for a reconsideration of this Court's Memorandum Opinion and Judgment entered on March 3, 1975, wherein the road running from the northwestern to the northeastern corners of plaintiffs' property in Plot No. 36, Estate St. John, St. Croix, was deemed a public right-of-way. Plaintiffs' appended Memorandum of law addresses itself solely to the issue of whether or not 43 U.S.C. § 932 is applicable in the Virgin Islands. In the face of the surprising dearth of case law on the issue of which federal statutes apply in these islands, I have agreed to reconsider the position taken in my Opinion of March 3rd.

Plaintiffs' position, apparently derived from the 1921 Third Circuit decision in Soto v. United States, 273 F. 628, 1 V.I. 536, is that because the Virgin Islands has been designated a territory appurtenant to rather than incorporated into the United States, the only laws of the United States applicable here are the Act of Congress of March 3, 1917, the subsequent Organic Acts of 1936 and 1954, the fundamental law of the Constitution and federal statutes made expressly applicable to the territories. Soto v. United

States, 273 F. at 633. See also Allen v. United States, 47 F.2d 735, 736 (3d Cir. 1931).

That the Virgin Islands are an unincorporated territory of the United States cannot be disputed. From that fact of unincorporation alone, however, one cannot assume the non-applicability of all federal statutes which do not make specific reference to the territories. For, Section 1891 of the Revised Statutes of the United States, 48 U.S.C. § 1490, enacted by Congress in 1875, provided that:

"[t]he Constitution and all laws of the United States which are not locally inapplicable shall have the same force and effect within all the *organized* Territories, and in every Territory hereafter *organized* as elsewhere within the United States." (emphasis added.)

The proper inquiry, then, at least up to the date of repeal of Section 1891 in 1933, is whether the Virgin Islands were an "organized" territory upon the enactment of the Act of March 3, 1917. In Richardson v. Electoral Boards, 1 V.I. 301 (D.V.I. 1936), the Court enumerated the aspects of an organized territory clearly evinced by these islands in 1916 under Danish rule and thereafter continued upon American acquisition in 1917.

"There was land, which was inhabited by human beings living under a civilized form of Government. They had (1) a basic law, Amalienborg Code of 1863 . . . as modified by the Amalienborg Code of 1906 . . . , (2) a Chief Executive, the Governor, (3) a legislative assembly in each of two organized municipalities, (4) power in the Legislative Assemblies by joint action to legislate for the entire Dutch Islands, although the legislative power was subject to the approval of the King and Diet in Denmark, (5) a Judiciary, consisting of lower, general, and appellate courts, (6) an elaborate administrative organization, (7) popular elections and, (8) a great degree of supervised local autonomy".

Id. at 332–33. The Court concluded that the Virgin Islands have been an organized territory of the United States since

their acquisition,[1] thus triggering the implicit adoption by the Virgin Islands, via Section 1891, of all laws of the United States not expressly inapplicable. Id. at 334.

Since the Third Circuit in both the Soto and Allen cases, handed down in 1921 and 1931 respectively, failed to consider both that an unincorporated territory may nonetheless be organized [see Smith v. Government of the Virgin Islands, 6 V.I. 136, 144 (3d Cir. 1967)] and the potential applicability of Section 1891 to these islands, I must find that the precedential impact of these decisions is greatly diminished.

▇▇ Enacted by Congress in 1866, 43 U.S.C. § 932, the federal right-of-way dedication provision, became law in the Virgin Islands by way of Section 1891 in 1917 and remained so at least until the repeal of 1891 in 1933. Under the facts of the instant litigation, the United States Government did not become owner of the disputed land until December 19, 1935. The Federal Government's Section 932-type offer to dedicate unreserved lands for highway purposes clearly does not become ripe until the government assumes ownership. The question thus arises as to what effect, if any, the repeal of Section 1891 in 1933 has on the applicability of 43 U.S.C. § 932 in 1935.

However meager in legislative history the repeal statute may be, its essential objective is a wholesale repeal of a large number of statutes, including Section 1891, which Congress had determined to be "obsolete". See Act of Mar. 3, 1933, ch. 202, § 1, 47 Stat. 1428. The repeal of Section 1891, then, is not necessarily reflective of a change in congressional policy but rather an acknowledgment that there were other, more recent, statutory enactments which

---

[1] I do not believe that the Third Circuit decision in Smith v. Government of the Virgin Islands, 6 V.I. 136 (3d Cir. 1967), compels a different result. Although the Court indicated unequivocally that the Virgin Islands have been organized since at least the promulgation of the Organic Act of 1936 [id. at 147], the status of the islands prior thereto was not considered by the Court.

effectively replaced it. In 1912 and 1932, for example, Congress enacted individual provisions virtually identical in content to Section 1891 for the territories of Alaska and Hawaii, respectively. See 48 U.S.C. § 23, 37 Stat. 512 (Alaska); 48 U.S.C. § 495, 47 Stat. 205 (Hawaii). Section 3 of the 1933 repeal statute further buttresses the view that no affirmative change was intended by Congress in its repeal of 1891. That provision suggests that any rights or liabilities already existing on March 3, 1933 shall not be affected by the repeal of the delineated statutes. 47 Stat. at 1431. See also United States v. Obermeier, 186 F.2d 243, 252 (2d Cir. 1950).

Unfortunately, no section replacing 1891 was enacted for the Virgin Islands, thus leaving a conspicuous gap insofar as legislative intent is concerned between the repeal of Section 1891 in 1933 and the enactment of the Organic Act of 1936. Section 18 of the Organic Act of 1936 provided in part that "[t]he laws of the United States applicable to the Virgin Islands on the date of the enactment of this Act, . . . not inconsistent with this Act, shal¹ continue in force and effect". It can thus be seen that the 1936 Act itself contains nothing which might indicate a departure from the policies embodied in Section 1891 of the Revised Statutes. Indeed, Section 4(e) of the 1936 Act, which by its terms prohibits the impairment of any authorizations, permits, or other powers heretofore granted to the Virgin Islands by the Federal Government, appears on its face to encompass 932-type statutes and further evidences an unwillingness to cut off the benefits derived therefrom.

From the foregoing discussion, it is clear that from 1875 to 1933, Congress intended to extend the laws of the United States, at least those of general character and universal application [see Buttron v. El Paso, 93 S.W. 676 (Tex. Civ. App. 1906)], to its territories. As stated previously, nothing in the Organic Act of 1936 in any way modifies

this posture; and in the absence of any indication in the years between 1933 and 1936 that Congress intended to do so, I must find that the spirit and fundamental direction of Section 1891 has endured.

Nor can a change in legislative emphasis be found in the Revised Organic Act of 1954. Promulgated primarily to remove the restrictions placed upon the local legislature by the 1936 Act [see Virgo Corp. v. Paiewonsky, 6 V.I. 256, 272 (3rd Cir. 1967)], the 1954 Act in Section 8(c) provides for the continued applicability of all federal laws heretofore deemed applicable to the Virgin Islands.[2]

Even more compelling than the foregoing analysis, however, are the important policy considerations set forth in Part II of my Memorandum Opinion of March 3, 1975. To the reasons stated therein, I must add that of necessity. 48 U.S.C. § 1489 provides in essence that there can be no adverse possession in territorial lands against the United States. Without Section 932 to protect those who have encroached upon public lands with the actual or ostensible concurrence of the Federal Government, anyone who would do so would be a trespasser and thus forced to assume a legally indefensible position.

Although the March 3rd Opinion of this Court was based primarily on the dedication provision of 43 U.S.C. § 932, I made an alternative finding that the 1947 quitclaim deed from the Federal Government to the Municipality of St. Croix included the road in question, despite the failure of the road to appear on the Revised Subdivision Map dated March 13, 1947. In light of this alternative basis for my decision, I need not have indulged in a total reevaluation

---

[2] Section 8(d) of the Revised Organic Act of 1954 provided for the appointment of a presidential commission to survey the field of federal statutes and to make recommendations to Congress as to which laws of the United States should be made applicable to the Virgin Islands. The annotations following both Title 48 of the United States Code and Title 1 of the Virgin Islands Code give. no indication as whether said commission was ever appointed, and if so, whether any recommendations were in fact made.

of my position on the applicability of Section 932 to these islands. I did so, however, in the hope that the reasons set forth on that issue would fill the void created by the repeal of Section 1891 of the Revised Statutes.

ORDER

In accordance with the foregoing Memorandum Opinion and the reasons set forth therein, it is hereby

ORDERED that, after having reviewed and reconsidered its Memorandum Opinion and Judgment entered on March 3, 1975, this Court reaffirms its position taken therein.

