GOVERNMENT OF THE VIRGIN ISLANDS

v.

ALEIDA RODRIGUEZ

Criminal No. 39-1968

GOVERNMENT OF THE VIRGIN ISLANDS

v.

JOSE MANUEL NIEVES

Criminal No. 40-1968

GOVERNMENT OF THE VIRGIN ISLANDS

v.

ERNESTINA CORDERO

Criminal No. 41-1968

GOVERNMENT OF THE VIRGIN ISLANDS

v.

ADELA GARCIA

Criminal No. 42-1968

GOVERNMENT OF THE VIRGIN ISLANDS

v.

GLADYS RAMOS

Criminal No. 43-1968

GOVERNMENT OF THE VIRGIN ISLANDS

v.

BECKY SALVAGE

Criminal No. 44-1968

District Court of the Virgin Islands
Div. of St. Croix

June 30, 1969

*See, also, 300 F.Supp. 860*

ATTORNEY GENERAL, *for Government*

RONALD H. TONKIN, ESQ., Christiansted, St. Croix, Virgin Islands, *for defendants*

MARIS, *Circuit Judge*

OPINION

MARIS, *Circuit Judge*

These are appeals by the defendants from the Municipal Court of the Virgin Islands in which defendant Jose Manuel Nieves was found guilty of maintaining a house of prostitution in violation of 14 V.I.C. § 1622(4); defendant Gladys Ramos was found guilty of soliciting in the house of the defendant Nieves for the purpose of prostitution in violation of 14 V.I.C. § 1622(2); and defendants Aleida

Rodriguez, Ernestina Cordero, Adela Garcia and Becky Salvage were found guilty under the vagrancy statute, 14 V.I.C. § 2221(8), of residing and loitering in the house of defendant Nieves, a house of ill fame. The defendant Nieves was sentenced to 90 days imprisonment; the other defendants were sentenced to 30 days imprisonment each.

Prior to the trial, the trial judge heard testimony on the defendants' motion for return of property and to suppress evidence, which was denied. The trial judge also denied the motion of defendants Rodriguez, Cordero, Garcia and Salvage to dismiss the vagrancy charges against them.

The six defendants were tried together. At the trial Jaime Perez, a marshal in the Department of Public Safety, testified that on the evening of June 14, 1968, he entered the house leased by defendant Nieves. The door was wide open, about 20 people were on the premises, all men except the five female defendants, of whom about eight persons, including four of the female defendants, were in the parlor watching television and others were out on an open gallery. Perez walked through the parlor to the kitchen where a bar was set up and he purchased two bottles of Heineken beer, giving the bartender a $10.00 bill and receiving $9.00 in change. Defendant Becky Salvage was behind the bar. Perez had visited the house more than a month earlier and on the night of June 14th knew that defendant Nieves did not have a license to sell alcoholic beverages. Perez returned to the gallery and sat at a table outside the open door leading into the parlor. Defendant Gladys Ramos came out and solicited him for sexual intercourse. Shortly thereafter Perez reentered the parlor through the open door and arrested the defendants, assisted by other police officers, including a police woman and Detective Jose Torres, who had been waiting outside. No warrants of arrest or for search of the premises had

been issued prior thereto. No useful purpose would be served by reciting in detail all the evidence given at the trial. Suffice it to say that the evidence was ample to support the findings of the trial judge that defendant Nieves permitted the house to be used for purposes of prostitution, that defendant Ramos solicited in the house for the purpose of prostitution, and that defendants Rodriguez, Cordero, Garcia and Salvage lived in and loitered about the house, which was a house of ill fame, all as charged in the complaints.

On their appeals defendants Rodriguez, Cordero, Garcia and Salvage urge that it was error for the trial judge to deny their motion to dismiss the vagrancy complaints against them, contending that on their face no criminal offense within the meaning of the vagrancy statute, 14 V.I.C. § 2221(8), was charged. All the defendants contend that the trial judge erred in denying their motion to suppress the evidence and to dismiss the complaints on the ground that the search was illegal in that no search warrant had been issued. To these contentions I now turn.

█ █ The four defendants, in their attack upon the complaints issued under the vagrancy statute, argue that when vagrancy is defined as loitering around houses of prostitution, it must be shown that the loitering is habitual. The statute here involved provides:

"Whoever— . . . (8) lives in or loiters about houses of ill fame; . . . shall be deemed a vagrant. . . ." [14 V.I.C. § 2221(8).]

The complaints charged that the defendants on June 14, 1968 "between the hours of 10:00 P.M. and 11:00 P.M. did reside and loiter in a house of ill fame; to wit: the house at Grange Hill". Section 2221(8) was derived from section 647(8) of the California Penal Code. The California courts have held that as used in its vagrancy statutes the term "loiter" has a well-recognized meaning, namely, "to linger

idly by the way, to idle." Phillips v. Municipal Court of Los Angeles, 1938, 24 Cal.App.2d 453, 455, 75 P.2d 548, 549; Wright v. Munro, 1956, 144 Cal.App.2d 843, 301 P.2d 997, 999. See also Webster's New International Dictionary, 2d Ed., p. 1454. This definition of the word "loiter" by the California courts conforms with our Statutory mandate that "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. The defendants rely upon Martoni v. State, 1914, 74 Tex.Cr. 64, 166 S.W. 1169, and King v. State, 1916, 78 Tex.Cr. 408, 181 S.W. 736. Their reliance is misplaced, however, for in those cases the charges against the defendants were that they "did habitually loiter in and around houses of prostitution." Thus it appears that the pleadings in those cases required a showing that the loitering was habitual. The Virgin Islands statute, however, as we have seen, proscribes all loitering in houses of ill fame and not merely habitual loitering, and no charge of habitual loitering was made in the present cases. I conclude that the Municipal Court did not err in denying the motion to dismiss the vagrancy complaints on this ground.

The four defendants further argue that section 2221(8) is so vague, indefinite and uncertain as to deny them the due process of law guaranteed to them by section 3 of the Revised Organic Act, 48 U.S.C.A. § 1561, and that the trial judge erred in not dismissing the vagrancy complaints on that ground. It is true that a statute so vague and indefinite, either in form or as interpreted, as to permit within the scope of its language the punishment of incidents fairly within the protection of the Constitution is void. Winters v. New York, 1948, 333 U.S. 507, 509, 92 L.Ed. 840, 846. No one may be required at peril of life, liberty or property to speculate as to the meaning

of a penal statute; all are entitled to be informed as to what the statute commands or forbids. Lanzetta v. New Jersey, 1939, 306 U.S. 451, 453, 83 L.Ed. 888, 890. However, I cannot agree that the language of the vagrancy statute, with the violation of which the defendants were charged, is vague or indefinite. The statute clearly stated that whoever "lives in or loiters about houses of ill fame" shall be deemed a vagrant. No one need speculate as to the meaning of this language. I conclude that the Municipal Court did not err in denying the defendants' motion to dismiss the complaints on the ground that the statute is void for indefiniteness.

■■ The four defendants make the further contention that the evidence was not sufficient to support the action of the Municipal Court in finding them guilty of vagrancy. This contention is also wholly lacking in merit. It will be observed that the statute makes it a vagrancy offense to live in or loiter about houses of ill fame. Since the complaints in the cases here on appeal charged that the defendants both lived in and loitered in a house of ill fame, the burden was upon the Government to prove both. There is no contention on the part of the defendants that they did not live or reside in that house. Defendant Garcia testified that she came there only two days before she was arrested, but the fact that she may have resided there for only two days did not controvert the charge that she resided there on the 14th of June, the day of her arrest. The finding of the trial judge that defendant Nieves permitted the house to be used for purposes of prostitution has ample support in the evidence and that the defendants "loitered" there in the sense that they were physically present in the house—lingering idly there—is also fully supported by the evidence. It is, of course, true that it is a denial of due process of law to convict and punish a person without evidence of his guilt. Thompson v. Louisville,

1960, 362 U.S. 199, 206, 4 L.ed.2d 654, 659; Shuttlesworth v. Birmingham, 1965, 382 U.S. 87, 95, 15 L.ed.2d 176, 181. But here, there was ample evidence to support the finding of the Municipal Court that these four defendants resided in and loitered about a house of ill fame. On this record it would be impossible to hold that the Municipal Court erred in so finding.

I turn then to consider the action of the Municipal Court in denying the motion filed by all six of the defendants for return of the seized property and to suppress evidence. The property seized were a cash pan containing $187.54, including a marked $10.00 bill which Perez used to pay for the beer he purchased; a stock of liquor, and about $144.00 taken from defendants Ramos, Cordero and Garcia. The defendants argue that the seizure of this property by the police officers without a search warrant, although they had ample time to obtain one, was illegal. I find no merit in this contention.

It is well settled that there may be a search incident to a lawful arrest and that physical evidence seized in the course of such a search will not be suppressed on the ground that the search was illegal. United States v. Rabinowitz, 1950, 339 U.S. 56, 94 L.ed. 653. The validity of the search and seizure of the property involved in this case, therefore, depends upon the validity of the arrest of the defendants. Whether their arrest was valid in turn depends upon whether, at the moment of the arrest, the police officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge were sufficient to warrant a prudent man in believing that the defendants had committed or were committing the offenses with which they were subsequently charged. Beck v. Ohio, 1964, 370 U.S. 89, 91, 13 L.ed.2d 142, 145.

In dealing with probable cause, the Supreme Court in Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 93 L.ed. 1879, 1890–1891, said:

"we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' . . . . And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, Ch. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch (US) 339, 348 . . . . Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the believe that' an offense has been committed. . . .

". . . The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests [i.e., the interests of individuals versus the interests of the community]. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

 The Government contends that the police officers had probable cause for believing that public offenses were being committed in defendant Nieves' house since there had been complaints from neighbors that they were disturbed by men knocking on their doors seeking women, that it was known to the police that alcoholic beverages were being sold on the premises without a license, and furthermore that the house was wide open for the public to enter. Moreover, says the Government, the Virgin Islands law gives a police officer authority to arrest an individual without a warrant "for a public offense committed or attempted in his presence", 5 V.I.C. § 3562 (1), and the evi-

dence shows that such offenses[1] were being committed or attempted in the presence of the officers in the present cases. The defendants, however, argue that this statutory authority is limited by 5 V.I.C. § 3565(b) which provides that "If the offense charged is a felony, the arrest may be made on any day, and at any time of day or night. If it is a misdemeanor, the arrest cannot be made at night, unless the warrant so directs." They urge that these arrests being made for misdemeanors[2] may not be made at night unless the warrant so directs and since these arrests were made at night without a warrant, they were illegal. If the provisions of these two statutes were given the limiting effect argued for by the defendants, law violators would during the nighttime be permitted to violate the law with impunity and an officer would be helpless to perform a mandatory duty. Arguments similar to those made here were made with respect to substantially similar statutory provisions in the case of Smith v. Lott, 1952, 73 Idaho 205, 249 P.2d 803, 804. In that case the court said: "If an officer, on seeing an offense committed, were required to go before a justice of the peace, or other magistrate, and obtain a warrant, or wait for the sun to rise, the offender could in the meantime be without the jurisdiction, or in parts unknown, and the purpose and objective of the statute would be circumvented." The court held that the statutory authority to arrest without warrant any person committing or attempting to commit in the presence of the officer a violation of the law was not limited to any particular time of the day. See also People v. Craig, 1907, 152 Cal. 42, 91 P. 997. Accordingly, I hold that section 3565(b) has no application to a misdemeanor

---

[1] An "offense" is defined as "an act committed or omitted in violation of a law of the Virgin Islands and punishable by—(1) imprisonment; or (2) fine; . . . ." 14 V.I.C. § 1.

[2] Under 14 V.I.C. § 2 a misdemeanor is a crime or offense punishable by imprisonment for less than one year.

committed or attempted to be committed in an officer's presence, which of necessity has to be acted upon immediately, and it does not prohibit the officer, under those circumstances, from making the arrest at night. It follows that the arrests made in these cases were valid and that the Municipal Court did not err in denying the defendants' motion to suppress the evidence which was seized incident to those arrests.

 It should be added that none of the tangible property seized was offered in evidence at the trial except the marked $10.00 bill with which Perez paid for his purchase of beer. Even if the seizure of that bill had been unlawful, which it was not, its erroneous introduction into evidence would have been harmless in view of the overwhelming weight of the other testimony pointing to the guilt of the defendants.

 The defendants also contend that the Municipal Court erred in refusing to direct Detective Torres to produce a report or statement which he had prepared of what had happened in these cases. It is urged that under the rule of the Jencks Act, 18 U.S.C. § 3500, and Government of the Virgin Islands v. Lovell, 3 Cir. 1967, 378 F.2d 799, 6 V.I. 422, the present cases should be remanded to the Municipal Court with directions to hold a hearing as to whether the statement falls within the Act. It appears that what defendants' counsel sought to have produced on cross-examination, following Torres' direct testimony, was a personal memorandum prepared by the witness from his own records for the purpose of refreshing his recollection prior to the trial. He did not have the memorandum with him, but it was not shown that it was in the posession of the Government. Since the Jencks Act applies only to statements or reports in the possession of the Government, the Act can have no application here. Palermo v. United States, 1959, 360 U.S. 343, 3 L.ed.2d 1287.

■ Finally, the defendants urge that the sentences imposed by the Municipal Court were excessive. This, however, is not a matter which I am empowered to review.

The judgments of the Municipal Court will be affirmed.