GOVERNMENT OF THE VIRGIN ISLANDS, and
UNITED STATES OF AMERICA, Plaintiffs

v.

JUAN COLON RIJOS, Defendant

Criminal Nos. 4-1968—55-1967

District Court of the Virgin Islands

Div. of St. Croix

June 6, 1968

*See, also, 285 F.Supp. 126*

ALMERIC L. CHRISTIAN, United States Attorney, *for Government*

JAMES, HODGE & TONKIN, Christiansted, St. Croix, Virgin Islands (RONALD H. TONKIN of counsel), *for defendant*

CLARY, *District Judge*

## OPINION AND ORDER

The defendant, Juan Colon Rijos, a resident of the Virgin Islands, is charged by the United States with the unlawful importation of a narcotic drug (heroin) into the Virgin Islands, in violation of a Federal statute which forbids such importation. 21 U.S.C. § 174 (No. 55 of 1967). He is also charged by the Government of the Virgin Islands on three other counts, namely: (1) the unlawful possession of 74 packets of a narcotic drug (heroin), 18 V.I.C. § 631(b); (2) the unlawful possession of 1 hypodermic syringe and 5 hypodermic needles, with the intent to use same in the administering of narcotic drugs, 19 V.I.C. § 632(c), and (3) the unlawful possession of an unregistered and unlicensed firearm, in violation of 23 V.I.C. § 451 (No. 4 of 1968).

With respect to the first charge, the unlawful importation of narcotics, the defendant has moved to dismiss on the grounds that he was proceeded against on the basis of an information filed by the United States Attorney, rather than by indictment of a Grand Jury. He alleges that the Fifth Amendment to the Constitution of the United States guarantees this right as to all infamous Federal crimes.[1]

It is clear that the crime charged against Rijos is infamous since it carries with it imprisonment for more

---

[1] Fifth Amendment, United States Constitution: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentation of indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger . . . ."

than one year, upon conviction. See Rule 7(a) of the Federal Rules of Criminal Procedure; Mackin v. United States, 117 U.S. 348 (1886). Thus, the issue before us is narrowed to the question whether a person who commits an infamous Federal crime in the territory of the Virgin Islands is entitled to a Grand Jury indictment pursuant to the Fifth Amendment.

██ Although section 25 of the Revised Organic Act of 1954 (48 U.S.C. § 1615) and Rule 54(a)(1) of the Federal Rules of Criminal Procedure specifically provide that *all* offenses shall continue to be prosecuted in the District Court of the Virgin Islands by information, except such as may be required by local law to be prosecuted by indictment by Grand Jury, defendant contends that this authorization does not refer to prosecutions of *Federal crimes* committed in the Virgin Islands. It is true that heretofore cases which have sanctioned this procedure have involved only offenses against the Virgin Islands and not the United States. Soto v. United States, 1 V.I. 536, 273 F. 628 (3 Cir. 1921); Rivera v. Government of Virgin Islands, 6 V.I. 155, 375 F.2d 988 (3 Cir. 1967). The Circuit Court, in Rivera, held that the right of presentment by the Grand Jury is merely a remedial right which is not among the fundamental rights which Congress must secure for the inhabitants of an unincorporated territory of the United States, such as the Virgin Islands. No distinction between Federal and local offenses was made in Rivera, and in view of the all-embracing language of the Federal Rules and the Organic Act, no such distinction is warranted. This conclusion is further buttressed by the Third Circuit's decision in Government of Virgin Islands v. Solis, 4 V.I. 615, 334 F.2d 517 (3 Cir. 1964) where the Court, in applying the Mallory rule to the Virgin Islands, ruled at 620, 519:

480

"Considerations of logic and policy underlie the requirement that the Federal Rules be applied to all criminal proceedings in the District Court of the Virgin Islands, whether the crime is proscribed by *local* or *Federal* law." (Emphasis supplied.)

It is apparent, therefore, that Rule 54(a)(1) applies, whether the crime is local or Federal in nature.

 We must now examine whether Rule 54(a)(1) and section 25 of the Revised Organic Act, which authorize the procedure of information in all offenses against the United States or the Virgin Islands, are constitutional. Such an inquiry must first begin with an examination of the status of the Islands in question. The Virgin Islands are an unincorporated territory of the United States. Smith v. Government of Virgin Islands, 6 V.I. 136, 375 F.2d 714 (3 Cir. 1967). As an unincorporated territory, it is subject to the power of Congress which is empowered to make suitable rules and regulations to govern the territory, pursuant to Article 4, Section 3, of the United States Constitution.[2] All aspects of the Constitution do not *ex proprio vigore* become operative in these territories, but require positive Congressional action in order for the Constitution to fully apply. It is only those basic fundamental principles inherent in the Constitution which apply automatically. Soto v. United States, 273 F. 628 (3 Cir. 1921). It is settled that the right to trial by jury and Grand Jury presentments are not among those fundamental rights and therefore do not apply to the Virgin Islands without Congressional approval. Downes v. Bidwell, 182 U.S. 244 (1901); Dorr v. United States, 195 U.S. 138 (1903); Rasmussen v. United States, 197 U.S. 516 (1905); Balzac v. Porto Rico, 258 U.S. 298 (1922); Rivera v. Government of Virgin Islands, supra.

---

[2] "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ."

481

Thus, until a territory is incorporated into the United States, full constitutional guarantees remain in abeyance.

Although the question of whether the Constitution follows the flag in unincorporated territories has been a controversial one, the answer must still remain in the negative in view of these precedents. The rationale for Congressional control over the legal structure and procedure of these unincorporated territories is that Congress should have a free hand in dealing with peoples of an alien and different civilization. This is sensible since it would be unrealistic for a territory accustomed to its own legal traditions and customs to be forced to accept an alien brand of jurisprudence overnight.

The cases of Reid v. Covert, 354 U.S. 1 (1956) and Kinsella v. Singleton, 361 U.S. 234 (1960), cited by defendant in support of his motion, have not impliedly overruled the incorporation doctrine, nor have they diluted its rationale. Both cases involved the power of Congress to expose civilians to trial by military tribunals under military regulations and procedures for offenses against the United States. They were concerned with the effect of a distinct and different constitutional standard, that of Article I, Section 8, Clause 14, which gives Congress the power to "make Rules for the Government and Regulation of the Land and naval Forces . . . ." Furthermore, the "Insular Cases", such as Downes and Dorr, were distinguished by the Supreme Court in Reid and Kinsella on the basis that they involved the power of Congress to provide rules and regulations to govern territories with wholly dissimilar traditions and institutions. Reid, supra, at p. 14. Although the Court concluded that the "Insular Cases" should not be given any further expansion, this is not to say that they are no longer of any constitutional validity.

Therefore, defendant's motion to dismiss is denied and the Government of the United States is authorized to institute criminal proceedings by information.

The defendant has also moved, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress evidence which he alleges was gained from an illegal search of his person and his apartment. In support of this motion, defendant contends that he was arrested without a warrant and without probable cause, in violation of the Fourth Amendment, and therefore the search incident to that unlawful arrest was illegal. With respect to the search of his apartment, defendant alleges that the search warrant was defective because it was based upon an affidavit which claimed that the informant was a reliable source, when, in fact, he was not. Secondly, defendant alleges that the police failed to execute the search warrant properly in that the proper warnings and notice were not given to the apartment's occupants.

A hearing on defendant's motion to suppress was held by this Court on March 29, 1968 at which the following relevant facts were adduced.

On October 13, 1967, Patrolman Carlton Wakefield, a Virgin Islands police officer, secured a warrant to search apartment 242, Building 38, in the Ralph de Chabert Project. Defendant was listed as the lessee of that apartment. The warrant was issued on the basis of an affidavit signed by Patrolman Wakefield in which he stated that a reliable and named informant had told him that he had purchased marijuana from defendant in the past. At Wakefield's request, the informant purchased more of the same on October 13, 1967 which Wakefield examined and determined to be similar to other known quantities of marijuana which affiant had previously examined. The affidavit also recited the fact that the informant has proved reliable in the past.

Pursuant to this warrant, Wakefield, accompanied by five other police officers, arrived at defendant's residence, after securing a key to his apartment from the house project manager. At this juncture, the facts are somewhat in dispute as to whether the officers did in fact knock on the apartment door before inserting the key, and as to whether the door was opened from the inside before the key was turned and the door pushed open. The police maintain that after knocking quite loudly on the door for approximately two minutes and no answer forthcoming, the procured key was inserted to gain entrance. At this time, the police assert that the door was opened from the inside by an occupant whom the police cannot remember specifically. The defendant's wife, his friends, Anibal Albert and his wife, Everne, who were inside the apartment, countered this testimony by asserting that no knocking was heard from within and that the door was opened, not by them but by the police. The police did admit that no announcement or notice was given to the occupants within while they were still outside the apartment.

A review of the whole record reveals at least one inconsistency in the testimony of the police as to their disputed evidence. At the preliminary hearing before Judge Moorhead on February 5, 1968, Patrolman Wakefield testified that the procured key was used to gain entrance into the apartment. No mention was made at this earlier hearing as to the door being opened from the inside. Also, the fact that the police do not remember who opened the door, and their testimony that the nearest occupant to the door was some five to ten feet from them when they gained entrance, lead this Court to believe that entrance was gained by the police without any assistance or consent from the occupants within the apartment, and the Court so finds as a matter of fact.

Once inside, the search warrant was read, either to Mrs. Rijos or Anibal Albert. The occupants were told not to move and the search commenced. It turned up a rifle in defendant's bedroom, some 11 packets of a substance believed to be heroin, along with a syringe and hypodermic needles, all of which were contained in a metal box located in the linen closet. Various other articles, such as a tear gas gun, nickel, dime wrappers, were also found in the linen closet.[3]

Approximately forty-five minutes after the search began, defendant entered the apartment and was arrested thereafter for the illegal possession of the Enfield rifle found in the bedroom. The police testified at the hearing that they knew defendant did not possess a permit for the rifle and this was the reason for arrest. However, no inquiries were made as to who owned the rifle which, in fact, belonged to a deceased friend of the defendant. Incident to defendant's arrest, a search was made of his person which turned up 63 packets of a substance believed to be heroin. Subsequent laboratory tests confirmed the belief of the police that all these seized packets (some 74 in all) did contain about 20% heroin.

With these facts in view, we shall examine initially whether the affidavit sworn to by Wakefield was legally sufficient to sustain the search warrant.[4]

---

[3] The Inventory of Property listed on reverse side of the search warrant contained the following: "11 packages of a substance believed to be Heroin (Found in Apt. 242); 63 packages of a substance believed to be Heroin found in the pocket of Juan Colon Rijos; 5 Hypodermic needles found in a box in the Apt. 242; 2 glass eye dropper; 2 bottle caps used in the preparation of Narcotic usage; 68 Glassine wrappers used in the packaging of Narcotics; 1 Tear gas gun with live cartridge in chamber & 1 spare cartridge; 9 nickel paper coin wrappers; 3 dime paper coin wrappers; 70¢ in coins (U.S.); 1 silver dollar; 1 half dollar; 1 303 Enfield rifle Sr. No. 89C5103 with 5 live cartridges."

[4] "I, Carlton Wakefield, Patrolman, being duly sworn declare that on October 12, 1967, I was informed by one Douglas Abbott that one Juan Colon Rijos is a dealer in Narcotics and he Juan Colon Rijos customarily keeps narcotics in his home, located at Ralph de Chabert Project, Building 38,

 It is now well established that an officer may not properly issue a warrant for the search of private dwellings without probable cause. This requirement is satisfied only when facts or circumstances, rather than mere affirmance of belief or suspicion, are submitted to the issuing officer. Aguilar v. Texas, 378 U.S. 108 (1964). The facts presented before the issuing officer in this case were that a named informant had purchased marijuana from defendant in the past and, at the instigation of police, had purchased additional marijuana which was subsequently examined by affiant and concluded to be marijuana. This is sufficient under the Aguilar standard.

██ ██ The defendant also maintains that the informant is unreliable since information he has given in the past has never lead to any arrests. This fact is not controlling, however, since probable cause simply requires more than mere suspicion, but less than evidence that would justify

---

Apartment 242, Christiansted, St. Croix. Douglas Abbott also told me that he had on October 12, 1967, about the hour of 7:00 P.M. purchase Marihuana from Juan Colon Rijos at his residence indicated above.

The undersigned requested Douglas Abbott to purchase more of the said Marihuana from Juan Colon Rijos at his home, which Abbott agreed to do. Thereafter on October 13, 1967, about the hour of 1:00 A.M. the said Douglas Abbott returned to the undersigned with a package and stated it was the Marihuana which he had purchased from Juan Colon Rijos at my request.

The undersigned examined the contents of the package which appeared to be Marihuana. The undersigned has examined known quantities of Marihuana and the substance within the above mentioned package appeared to be the same in appearance. That the informant described as Douglas Abbott has in the past on previous occasions submitted information to the undersigned and other members of the Investigation Bureau which upon investigation has been true and reliable.

The undersigned and other officers of the Investigation Bureau have in the past received information from other sources other than Douglas Abbott, to the effect that Juan Colon Rijos does sell Marihuana and stores same at his residence.

The undersigned therefore requests a Search Warrant be issued for the search of the premises occupied by Juan Colon Rijos as described above, for Marihuana and the seizure of same.

/s/ Carlton Wakefield
Carlton Wakefield,
Patrolman

Subscribed and sworn to before me this 13th day of October, 1967.
(Seal affixed) /s/ Rita G. Powell"

486

a conviction. Brinegar v. United States, 338 U.S. 160 (1949). Additionally, the informer's hearsay evidence was reaffirmed by the officer's own investigation of the substance bought from defendant. See Jones v. United States, 362 U.S. 257 (1960) where the Supreme Court stated at 269:

[An officer] "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."

 Since the issuance of the search warrant in this case was based upon sufficient probable cause, the subsequent search will not be deemed invalid on this basis.

A second consideration before this Court is whether this lawfully issued warrant was executed properly. As stated before, it is undisputed that the police made no announcement of either their identity or purpose while they were outside defendant's apartment. Although it was disputed during the hearing as to whether the door was opened by the occupants or the police, I have concluded that the door was opened from the outside by the police without prior announcement of their presence and the fact that they were there to execute a search warrant.

 Proper execution of a search warrant required that the police announce their purpose and authority before breaking into the premises to be searched. 18 U.S.C. § 3109, Woods v. United States, 240 F.2d 37 (D.C. Cir. 1957), cert. denied, 353 U.S. 941 (1957). Entry gained by means of a passkey obtained from the house project manager amounts to the same thing as breaking into the premises which is required by the statute. Munoz v. United States, 325 F.2d 23 (9 Cir. 1963); Keiningham v. United States, 287 F.2d 126 (D.C. Cir. 1960).

 It is clear, therefore, that the unannounced entry of the police into defendant's apartment by means

487

of a passkey is violative of deeply rooted constitutional rights which are guaranteed to the defendant. Miller v. United States, 357 U.S. 301 (1958); Ker v. California, 374 U.S. 23 (1962). No extraordinary circumstances such as the imminent destruction of evidence or the need to rescue a victim in peril have been related by the police to justify this lack of notice. Wong Sun v. United States, 371 U.S. 471 (1963). Since notice is crucial before any forceful entry into a person's premises, the search conducted in this case must be deemed unlawful.

 The search of defendant's person must also be deemed unlawful. It is admitted that the police can search a person without a warrant incident to a lawful arrest. However, for an arrest to be lawful, it must be based upon probable cause. Henry v. United States, 361 U.S. 98 (1959). The threshold question in such cases is whether the officers could have procured a warrant for the arrest of Rijos on the information which impelled them to act. Wong Sun v. United States, 371 U.S. 471 (1963). No warrant could have been procured in this instance since the police had no information concerning defendant's possession of the rifle prior to the unlawful search. The arrest cannot be justified on the sole ground of discovering a rifle in defendant's bedroom during an unlawful search. The police may never justify an arrest by an unlawful search and at the same time justify a search by an unlawful arrest. United States v. Elliott, 210 F.Supp. 357 (D. Mass. 1962).

██ ██ Prior to his arrest, Rijos was not questioned as to the ownership or registration of the rifle. The assumption that he owned it merely because it was found in his bedroom does not rise to the standard of probable cause defined by the Supreme Court in Brinegar v. United States, 338 U.S. 160 (1949) at 175–176:

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

██ ██ Additionally, an arrest may never be made when it is merely a pretext for a search of the person arrested. McKnight v. United States, 183 F.2d 977 (D.C. Cir. 1950). Here, the arresting officer admitted upon cross-examination that defendant was arrested solely because the police desired to search him (N.T. p. 37, hearing before Chief Judge Clary). A search may never be countenanced upon this admitted purpose.

██ Since defendant admittedly did not commit the alleged misdemeanor offense in the presence of the arresting officer, coupled with the lack of probable cause, this arrest made for the pretext of searching defendant's person must be struck down and the evidence gained from the search suppressed.

### ORDER

AND NOW, to wit, this 6th day of June, 1968, for the reasons set forth in the foregoing Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that

1. Defendant's motion to dismiss the criminal information filed against him by the United States in No. 55 of 1967 is DENIED.

2. Defendant's motion to suppress each and every item of evidence seized as a result of the search of his apartment and his person is GRANTED.