## GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

## CONNIE NICHOLAS, Defendant

Criminal No. 36/1981

District Court of the Virgin Islands

Div. of St. Croix

August 17, 1983

JAMES W. DIEHM, ESQ., United States Attorney, Christiansted, St. Croix, V.I., *for plaintiff/respondent*

MICHAEL A. JOSEPH, ESQ., Federal Public Defender, Christiansted, St. Croix, V.I., *for defendant/petitioner*

SILVERLIGHT, *Judge*, Sitting by Designation

## MEMORANDUM OPINION
## I. INTRODUCTION

This matter is now before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. 2255.[1] The Government has filed an Opposition to the Motion and petitioner has filed a Reply to Respondent's Opposition.

Petitioner alleges as grounds for his application: (1) ineffective assistance of counsel, and (2) improper impanelling of jury. For the reasons set out below petitioner's Motion is denied without an evidentiary hearing.

## II. § 2255 STANDARD

■■■■ A Motion under 28 U.S.C. § 2255 is "an independent and collateral inquiry into the validity of the conviction". United States v. Hyman, 342 U.S. 205 (1952). It provides a *civil* statutory remedy for federal prisoners to collaterally attack their conviction, Heflin v. United States, 385 U.S. 415, 418 n.7 (1959), absent the practical difficulties attached to a habeas corpus proceeding. Id. at 417. The section provides the sentencing court with a remedy exactly commensurate with that which had previous been available by habeas corpus in the court of the district where the prisoner was confined. Hill v. United States, 368 U.S. 424 (1962). See also, Kaufman v. United States, 394 U.S. 217 (1969). However, the section also provides a mechanism for more flexible remedies as law and justice may require. Williams v. United States, 399 F.2d 492 (9th Cir.), cert. denied, 393 U.S. 1034 (1969). If relief may be granted under the section, it is the exclusive remedy for a federal prisoner. C. Wright, Federal Practice and Procedure: Criminal 2d § 591 at 425 (1982). The scope of a § 2255 Motion is limited to four grounds:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States," (2) "that the court was without jurisdiction to impose such sentence," (3) "that the sentence was in excess of the maximum authorized by law," and (4) that the sentence "is otherwise subject to collateral attack."

See generally, Wright, supra at § 593. As such, the purpose of a section 2255 Motion is not to retry cases, Holt v. United States, 303

---

[1] Since this is a case in which the District Court is reviewing local law as opposed to Federal law, technically 28 U.S.C. 2254 is the appropriate section under which relief should be sought. Accord Government of the Virgin Islands v. V.I. Paving, Inc., et al., No. 82–3408, slip op. at 6 (3d Cir., 1983) (District Court sitting as if local or state court when reviewing provisions of Virgin Islands law).

F.2d 791 (8th Cir.), cert. denied, 372 U.S. 970 (1962), nor is it a substitute for an appeal, United States v. Frady, 102 S.Ct. 1584 (1982), or to relitigate matters adversely decided on appeal. United States v. Orejuela, 639 F.2d 1055 (3d Cir. 1981).

## III. DISCUSSION

A. *Ineffective Assistance of Counsel.*

■■ Relief based on ineffective assistance of counsel will lie only if the deficiencies of counsel were so serious that defendant did not have effective assistance of counsel in the constitutional sense. United States v. Williams, 615 F.2d 585, 593–94 (3d Cir. 1980). The Third Circuit has adopted the oral competency test and therefore to prove ineffective assistance of counsel, the petitioner must sustain a heavy burden, United States ex rel. Johnson v. Johnson, 531 F.2d 169 (3d Cir.), cert. denied, 425 U.S. 997 (1976); United States v. Varga (3d Cir. 1971) showing that his attorney failed to exercise the customary skill and knowledge which normally prevails at the time and place. Williams, supra; Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970); United States v. Hines, 470 F.2d 225 (3d Cir.), cert. denied, 410 U.S. 968 (1972); Cerbo v. Fauver, 616 F.2d 214 (3d Cir. 1980); United States v. Swinehart, 617 F.2d 336 (3d Cir. 1980).

Petitioner alleges as specific instances of his counsel's ineffectiveness, the following:

1. "Trial attorney failed to move for dismissal of Count I when Trial Court dismissed Count III on grounds of lack of jurisdiction."
2. "Attorney failed to explore testimony of description of killer who is taller than defendant."
3. "[Attorney] did not object to defendant being called 'mug'."
4. "Attorney allowed [reference to] tape, alleged to be of defendant's voice, without test."

■ Three of petitioner's four allegations were raised on direct appeal and the Third Circuit found no merit in any of those claims. Government of the Virgin Islands v. Connie Nicholas, 707 F.2d 1391 (3d Cir. 1982). They are now being raised again under the guise of ineffective assistance of counsel. It has been held that once a legal argument has been litigated and decided adversely to a criminal defendant on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255. See Kaufman v. United States, 394 U.S. 217, 227 n.8 (1969); Konigsberg v. United States,

418 F.2d 1270, 1273 (3d Cir. 1969), cert. denied, 398 U.S. 904 (1970). Accord Moore v. United States, 598 F.2d 439 (5th Cir. 1979); United States v. Woods, 567 F.2d 861 (8th Cir. 1978); United States v. Natelli, 553 F.2d 5 (2d Cir.), cert. denied, 434 U.S. 819 (1977). However, since counsel's arguments on appeal were based on somewhat different theories,[2] we will consider each of his claims for consideration of the cumulative effect, if any, of the alleged claims, in the ineffective assistance of counsel context. Petitioner's argument as to Count I, however, is now moot as he has been granted that relief by the Appeals Court.[3]

The nature of the allegations are such that a review of the file and record alone will suffice in making a determination as to whether or not petitioner was denied effective assistance of counsel. As a result thereof, no hearing is necessary on this issue. Page v. United States, 462 F.2d 932 (3d Cir. 1972).

██ 1. *Trial Counsel's Failure To Attack the Testimony Relating to Description and Identification of the Assailant.*

The Court finds this contention without merit. Petitioner's trial counsel explored the description issue immediately in his opening statement to the jury. There he expostulated to the jury that the description of the assailant given to the police by the surviving victim fit the Government's informant *rather* than petitioner. (Trial Transcript 53–54.) Further questioning regarding the description of the assailant was conducted at several points during cross-examination of one of the victims by Petitioner's counsel. (Trial Transcript 92–93, 98, 102.) Furthermore, defense counsel also cross-examined Ms. Wendt regarding her description of an individual she saw in the vicinity of the homicide (Trial Transcript 126–28), and likewise, for the same purposes cross-examined Henry Wagner in an attempt to bolster his argument that Mr. Wagner rather than his client fit the description of the assailant. (Trial Transcript 262.) Finally, counsel reiterated his contention that petitioner did not fit the description of the assailant in his closing argument (Trial Transcript 515, 522, 534) and argued to such an extent that the prosecution was forced to reply to the argument that Wagner better fit the description (Trial

---

[2] On direct appeal it was argued that each of these allegations constituted reversible trial error.

[3] Had such motion been made, it would have been denied since it is not necessary that the information charge the alleged robbery as an independent crime. As long as the intent to commit robbery is established during the trial of the felony murder charge, a basis for conviction of felony murder exists.

Transcript 539, 546–47.) In view of the above, and based on the Court's recollection of the events that transpired, the Court rejects this claim as being without merit. The tactics and strategies of counsel generally are not second guessed by courts, United States v. DeCosler, 487 F.2d 1197 (D.C. Cir. 1978), nor is it the court's function to evaluate the relative efficiency of trial tactics. Mitchell v. United States, 259 F.2d 787, 793 (D.C. Cir.), cert. denied, 358 U.S. 850 (1958).

2. *Trial Counsel's Failure To Object to Petitioner Being Referred to as "Mug".*

The Court also finds this contention without a *scintilla* of merit.

■■ The use of an alias on information is proper when relevant in identifying defendant, United States v. Wilkerson, 456 F.2d 57 (6th Cir.), cert. denied, Gray v. United States, 409 U.S. 926 (1972); United States v. Clark, 541 F.3d 1016 (4th Cir. 1976), and where reference to it would not be inflammatory or prejudicial. United States v. Clayton, 52 F.R.D. 360 (D.C. Ky. 1971). See also, Fed. R. Crim. P. 7(d) (1981). In the instant case, petitioner was allegedly known also as "Star" and "Mug". In fact Henry Wagner testified that he knew the defendant as "Star". As to the alias "Mug", while it appears that relevance to identification of the petitioner was not established, the Court's use of the alias constituted no prejudice to him. In addition, the Court repeatedly cautioned the jury that the information and its contents were not to be considered as evidence. (Trial Transcript 33–36, 549–51.) Counsel's failure to object to its use or request a cautionary instruction does *not* amount to ineffective assistance of counsel. It may be that the more prudent approach would have been to move to strike the alias but again the courts will not sit in hindsight and judge counsel's decisions.

3. *Trial Counsel's Failure To Object to Reference to the Tape of Petitioner's Voice Without Tests.*

■■ Despite petitioner's allegation, in his Reply to Respondent's Opposition, that the tape was never produced, the record shows that a copy of the same was given to defense counsel. (Trial Transcript 286–87.) Counsel apparently understood the significance of that tape because he moved for a continuance in order that a spectrograph or voiceprint be made of the voice on the tape alleged to be that of the defendant. The continuance was granted by the Court on June 23, 1981; however, when counsel later stipulated that the tape would not be offered into evidence, the Order was vacated, the ra-

186

tionale for its grant being moot. The acts of Petitioner's counsel fall squarely within the parameters of trial judgment. Hindsight may always be used by those not in the thick of a legal skirmish. However, the administration of justice is not scored by second guessing the trial strategy or tactics of counsel, United States v. Cotton, 446 F.2d 865, 867 (8th Cir. 1971). DeCosler, supra, and such errors do not afford constitutional grounds for post conviction relief. U.S. ex rel. Walker v. Henderson, 492 F.2d 1311 (2d Cir.), cert. denied, 417 U.S. 972 (1974). The Court had an opportunity to observe trial counsel's ability and finds that his acts were within the level of normal competency.

B. *Cumulative Effect of Claims.*

The remaining question to be addressed is: does the combined or cumulative effect of the various claims give rise to a constitutional basis for ineffective assistance of counsel? The Court holds that it does not. Each of the claims involve situations in which petitioner's counsel had to make a decision as to which course to pursue. The Court has already pointed out that errors of judgment or of trial strategy are not sufficient to amount to ineffective assistance of counsel, and therefore, petitioner's claim with regard to this issue is found to be meritless.

C. *Unconstitutional Impanelling of Petit Jury.*

■■■ 1. Weight of Affidavits.

As indicated earlier, a § 2255 Motion is cognizable only if it alleges a violation of a specific constitutional right. United States v. Henry, 447 U.S. 264, 268–69, 274 (1980). Petitioner contends that his constitutional right to a trial by jury has been denied because the jury was improperly impanelled. Petitioner alleges that Juror No. 8, Jeffrey Fleming, was partially deaf at the time of the trial and as a result could not follow the trial proceedings. The allegations were supported by an affidavit by Mr. Fleming.[4] However, after signing

---

[4] The affidavit reads in pertinent part as follows:

JEFFREY FLEMING, being duly sworn, deposes and says:

1. In 1967, during military service in Vietnam, I suffered an injury which resulted in partial deafness in both ears.

2. I, therefore, find it necessary to read lips, after having been formally educated to do the same, and wear an electronic hearing aid in order to improve my ability to communicate.

3. On or about 1981, I was selected to serve as a juror in this case.

4. During the two day trial of this case, I often was unable to decipher what was being said because of removal of my hearing aid due to discomfort and my

187

the affidavit, Mr. Fleming, upon being interviewed by representatives of the U.S. Attorney's Office, stated, in the presence of an Assistant U.S. Attorney and a local police officer, that he was able to hear well enough to understand the trial proceedings.[5] In addition, when presented with an affidavit, see Respondent's Exhibit "A", the substance of which indicated that he fully heard and understood the evidence adduced at trial and now maintains his verdict of guilty, a note, written in Fleming's own handwriting was submitted by the U.S. Attorney as an Exhibit annexed to the affidavit of Assistant U.S. Attorney Genevieve Holm stating that the contents of the affidavit prepared for him are true but that, as a matter of courtesy, he would not sign it until he had a chance to talk to the Federal Public Defender. See Respondent's Exhibit "B". Clearly, there is an irreconcilable inconsistency as to Mr. Fleming's position.

Furthermore, in paragraph 10 of Mr. Fleming's affidavit, he indicates that the Connie Nicholas trial "was the first and only time I

---

inability to directly see the lips of the witnesses and/or the attorneys and/or the judge, and, of course, insufficient volume of voice.

5. That was the first and only time I had served on a jury.

6. Subsequently, I was excused twice from jury service because of my hearing impediment; once by the attorney calling attention to my hearing aid to the judge and, the other by Judge Raymond Finch after he was convinced that I had trouble hearing him.

[5] The affidavits of Officer Vasquez and Assistant U.S. Attorney Capedville both read in relevant part:

2. On Tuesday, May 10, 1983, in my presence, Jeffrey Fleming stated the following:

(a) He stated that he had no problem hearing and understanding the judge's voir dire of the jury panel during jury selection for the Connie Nicholas case;

(b) He stated that to the best of his knowledge he heard and understood all the evidence in the case except for two times during the lawyer's arguments when he took off his hearing aid to change the batteries;

(c) He stated that during the times when he changed the batteries, he was able to read the lips of the attorneys;

(d) He stated that he took part in jury deliberations and was convinced that the defendant was guilty;

(e) He stated that he told the judge the same thing during the poll of the jury after the verdict was delivered;

(f) He stated that he continues to this day to stand by his verdict of guilty;

3. That during the lunch hour on Wednesday, May 11, 1983, Mr. Fleming appeared in the U.S. Attorney's Office and was shown a written statement which he read very carefully and thoroughly, a copy of the statement is appended hereto;

4. That after reading the statement he stated in my presence the statement is true;

5. That Mr. Fleming consistently represented that the statement was true and accurate.

had served on a jury". However, the Court is aware that Mr. Fleming was selected to two juries prior to the Connie Nicholas case.[6]

In view of the glaring inconsistencies with regard to the affidavit, the Court will give little weight to allegations that Mr. Fleming could not hear the trial proceedings.[7] This position is further supported by the trial procedures utilized by the Court at the beginning of the trial wherein inquiry was made of the jurors as to whether any of them had difficulty in hearing the proceedings, and instructing them to raise their hand to signify such difficulty. (Trial Transcript p. 3.) The same general question was posed again to the jury after their selection and immediately before the taking of testimony began. (Trial Transcript p. 39.) On each occasion no juror indicated that he or she had a problem hearing what was going on. Finally, the Court notes that the District Court courtroom had a speaker immediately over the jury box and the jurors are positioned in such a manner as to *not* obstruct their view of the Judge, attorneys or witnesses.

In conclusion, it is noted that this court presided at the trial and had the opportunity to personally observe Juror No. 8[8] during the jury selection, preliminary instructions and at the time of polling of the jurors as to the verdict.[9] At no time during any of these phases of the trial did the Court discern any hearing or visual problem with regard to Juror Fleming.[10]

---

[6] *See* Court file letter from District Court Clerk dated May 18, 1980.

[7] In view of the fact that the affidavits (the signed one and the "adopted" one) are diametrically opposed, the Court is inclined to give no weight to either. It is exactly this type of situation that gave rise to the exclusionary rule of Fed. R. Evid. 606(b).

[8] "The trial court is invested with a wide discretion in determining the competency of the jurors, and the court's judgment in this respect will not be interfered with except for abuse of discretion. Lias v. United States, 51 F.2d 215, 217 (4th Cir.), aff'd per curiam, 284 U.S. 584 (1931). See also United States v. Hendrix, 549 F.2d 1225, 1227–28 (9th Cir.), cert. denied, 434 U.S. 818 (1977). The Court in Hendrix stated "[t]he [trial] bias or prejudice amounted to a deprivation of Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees. 'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.' [citations]." Id.

[9] Likewise petitioner's counsel had the opportunity to observe Mr. Fleming during the entire trial.

[10] It is noted that the Court admitted into evidence at the hearing an Audiologic Report. Petitioner's Exhibit "A". However, the report is of no great significance for it fails to shed any light on the matter at hand. The report simply indicates that on November 4, 1977, Mr. Fleming had a hearing problem. After subsequent examinations in November and December 1980, a hearing aid was issued in February 5, 1981. Unfortunately, the report does not take into account the

Even assuming arguendo that the affidavit of Mr. Fleming was sufficient to conclude that he was partially deaf, this alone does not warrant any relief requested by petitioner. Several cases have held that where a juror was incapable of understanding the trial proceedings either because of an hearing impairment or failure to understand the English language, that no new trial was warranted. United States v. Pellegrini, 441 F.Supp. 1367 (E.D. Pa.), aff'd 586 F.2d 836 (3d Cir.), cert. denied, 438 U.S. 1050 (1977) (juror with difficulty understanding English language); United States v. Sears, 663 F.2d 896 (9th Cir. 1981) (juror with hearing impairment); United States v. Lyda, 321 F.2d 788 (9th Cir. 1963) (juror deaf). See generally 88 A.L.R.2d 1275. In Lyda the facts are strikingly similar. The defendant asserted that he was denied his constitutional right to trial by jury alleging that one of the jurors was deaf. As proof, defendant likewise relied upon an affidavit of a juror. Lyda, supra at 790. The court in Lyda looked at 28 U.S.C. 1861(3) which disqualifies as a juror one who is "incapable, by reason of mental or physical infirmities to render efficient jury service."[11] The Court denied the motion for a new trial and held that there was an insufficient showing of incompetency of a juror to establish an abuse of discretion by the trial judge in denying a new trial. Id. at 791.

2. Sanctity of Jury Deliberation.

 Disregarding the problems inherent in the affidavits, generally courts are reluctant to allow jurors to impeach their own verdict once the jury has been discharged.[12] McDonald v. Pless, 238

---

physical make-up of the court room. Issues relative to whether Juror Fleming could hear or not involve the volume of the court room's sound system, the juror's proximity to the speaker, the tonal quality of the speaker, and the ability of Juror Fleming to observe and read the lips of the trial participants. The Court, through personal observation, was able to judge these issues at the time of trial.

[11] Title 4, section 471 of the Virgin Islands Code prescribes the following qualifications in order to sit as a juror:

Any citizen of the United States who has attained the age of 18 years and has resided within the Territory for six months or more is competent to serve as a juror unless:

(1) He had been convicted in a state, territorial or federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

(2) He is unable to read, write, speak and understand the English language.

(3) He is incapable by reason of mental or physical infirmities to render efficient jury service.

Note that paragraph 3 is *identical* to the statute relied upon in Lyda.

[12] This rule was formulated to foster several public policies: (1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encourag-

190

U.S. 264, 267 (1915). The Third Circuit has enunciated very clear guidelines with respect to this question. In Government of the Virgin Islands v. Gereau, 523 F.2d 141 (3d Cir. 1975), cert. denied, 424 U.S. 917 (1976), the court said:

> Any attempt to impeach a jury verdict initially encounters two evidentiary obstacles: (1) producing evidence competent to attack the verdict, and (2) establishing the existence of grounds recognized as adequate to overturn the verdict. And even where both obstacles are cleared, there must be a finding that the party seeking to impeach the verdict has suffered prejudice from the misconduct of the jury.

■ An exception to the general rule is that "[a] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. Mattox v. United States, 146 U.S. 140 (1892) quoting Woodward v. Leavitt, 107 Mass. 453. The instant case provides no basis whatsoever to find any evidence of extraneous influence." Furthermore, even if such influence did exist, petitioner would not be entitled to set the verdict aside unless he can prove prejudice as a result of the act. United States ex rel. Owen v. McMann, 435 F.2d 813 (2d Cir. 1970), cert. denied, 402 U.S. 906 (1974).

■■ The principles articulated above are codified in Rule 606(b), Fed. R. Evid.[13] Rule 606(b) specifically provides that, except in cases of outside influence or extraneous prejudicial information, a juror is incompetent to give evidence to impeach a verdict. The rule also applies to affidavits as well as direct testimony. In that the contents of Mr. Fleming's affidavit does not fall within the limited exception of Rule 606(b), his statements are not competent to attack the verdict.

3. Right to Trial by "Twelve" Jurors.

Even if the foregoing were not true, the Court finds that the threshold issue regarding the constitutional right to a trial by jury has not been crossed. Prior to August 1968, there was no right to a trial by

---

ing free and open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; (5) maintaining the viability of the jury as a judicial decision-making body . . . . See Government of the Virgin Islands v. Gereau, 523 F.2d 141 (3d Cir.), cert. denied, 424 U.S. 917 (1976).

[13] The Federal Rules of Evidence are applicable in the Virgin Islands. 5 V.I.C. App. VI, R. 1005 (1982).

191

jury in criminal cases in the Virgin Islands unless demanded.[14] In 1968, Section 3 of the Revised Organic Act of 1954 was amended to provide its citizens with the *right* to an impartial trial by jury in criminal matters.[15] The distinction lies in the fact that prior to the Organic Act bill of rights amendment an individual had to demand a jury trial whereas after amendment and the adoption of the Sixth Amendment the right became an inherent one *unless* waived. The inclusion of the waiver concept was due to the fact that the Federal Rules embodied the existing practice of allowing a provision for waiver which has consistently been held to be constitutional. Adams, et al. v. United States ex rel. McCann, 317 U.S. 269, 275–78 (1942). See also Singer v. United States, 380 U.S. 24 (1963).

 The constitutional right to a jury trial for Virgin Islands residents stems from adoption, through Amendment of the Virgin Islands Bill of Rights, Section 3 of the Organic Act of 1954. This is because all remedial constitutional rights do not become operative in unincorporated territories until they are incorporated and thus until such time full constitutional guarantees remain in abeyance. Government of the Virgin Islands v. Bodle, 7 V.I. 507, 509 (3d Cir. 1970); Government of the Virgin Islands v. Rios, 6 V.I. 475, 481, 285

---

[14] The Virgin Islands is a Territory of the United States; however, its status is that of an unincorporated territory. Smith v. Government of the Virgin Islands, 6 V.I. 136, 375 F.2d 714, 718 (3d Cir. 1967). All aspects of the Constitution do not *ex proprio vigore* become operative in unincorporated territories, and until a territory is incorporated into the United States, full constitutional guarantees remain in abeyance. Government of the Virgin Islands v. Rijos, 6 V.I. 475, 285 F.Supp. 126, 129 (D.C.V.I. 1968); Rivera v. Government of the Virgin Islands, 6 V.I. 155, 375 F.2d 988 (3d Cir. 1967). The Sixth Amendment guarantees of a trial by jury in all criminal prosecutions is deemed a remedial right which is *not* among the fundamental rights which Congress in legislation for an unincorporated territory such as the Virgin Islands must secure to its inhabitants. Balzac v. Porto Rico, 258 U.S 298, 304–05 (1922); Rivera v. Government of the Virgin Islands, supra.

[15] The August 23, 1968, amendment read:

The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States: article I, section 9, clauses 2 and 3; article IV, section 1 and section 2; clause 1; the first to ninth amendments inclusive; the thirteenth amendment; the second sentence of section 1 of the fourteenth amendment; and the fifteenth and nineteenth amendments; Provided, however, that all offenses shall continue to be prosecuted in the district court by information as heretofore, except such as may be required by local law to be prosecuted by indictment by grand jury.

All laws enacted by Congress with respect to the Virgin Islands and all laws enacted by the territorial legislature of the Virgin Islands which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency.

F.Supp. 126 (D.V.I. 1968). The Bodle case is analogous to the situation presented here. There Bodle appealed from a judgment of conviction for forcible rape asserting, inter alia, that the presence on the jury of an individual whose sister had been the victim of forcible rape constituted a violation of his right to trial by an impartial jury as guaranteed by the Sixth Amendment. The juror had failed to disclose this fact during the voir dire though several general questions were asked to elicit information as to possible bias or prejudice on the part of any juror for the crime of rape. The Circuit Court held that though the juror's presence in the jury "created a situation so fundamentally unfair as to constitute a denial of due process of law" it did *not* reach "'constitutional proportions under a Sixth Amendment argument'". However, even after adoption of the constitutional right to trial by jury by the amendment of the Organic Act of 1954, that right is satisfied by a *jury of not less than six*. Williams v. Florida, 399 U.S. 78 (1970). The right to a jury trial of twelve is statutorily[16] created in this jurisdiction and *not*, as the Williams case indicated, a constitutional requirement. Thus, petitioner's attempt to attack his conviction because less than twelve jurors served is misplaced in a § 2255 motion which is geared only to the deprivation of constitutional rights.

It appears that even if Juror Fleming was not capable of hearing *any* of the trial, that proceeding with the remaining 11 jurors is constitutionally permissible. Interestingly, the recent Supreme Court amendment of Rule 23[17] of the Federal Rules of Criminal Procedure[18] provides for a jury of less than twelve in such case, 5

---

[16] The provision for a jury trial of twelve persons is at 5 V.I.C. 3602 (1982 Crim. Supp.). It provides that "[t]he trial jury in criminal actions shall consist of twelve persons, unless the parties consent to a lesser number, except as provided in Title 4, Section 40 of this Code". Section 40 provides for a six man jury in certain *misdemeanor* cases and therefore is not applicable in the instant case.

[17] The New Rule 23(b) reads:
> (b) JURY OF LESS THAN TWELVE. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.
> The Rule took effect on August 1, 1983.

[18] The Federal Rules of Criminal Procedure are applicable in the Virgin Islands. Government of the Virgin Islands v. Rivera Solis, 4 V.I. 615, 334 F.2d 517 (3d Cir. 1964).

U.S.L.W. 42 (U.S. May 3, 1982). The rationale is based in part on the fact that a jury of twelve at common law was basically an historical accident. In Williams, supra at 102–03, the Court concluded that "the fact that the jury at common law was composed of precisely twelve is an historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.'" (citation omitted) "To read the Sixth Amendment as forever codifying a feature so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution or in the reasoning of our past decisions." In closing the Court stated "[o]ur holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment which would forever dictate the precise number which can constitute a jury."[19]

 Though the change in the rule is not controlling, it is instructive of the trend developing fact and that the twelve man jury requirement is not a constitutional requirement but is statutorily grounded. As a consequence, Petitioner again falls short of establishing a constitutional basis for his argument.

## IV. HEARING

 The Court concludes that a hearing on the matter is not necessary. A hearing is not required where, as in the instant case, the Court which considers the section 2255 Motion participated in the original proceedings and has first hand knowledge of the facts therein. Smith v. United States, 635 F.2d 693, 697–98 (8th Cir. 1980), cert. denied, 450 U.S. 934 (1981); United States v. Boggs, 612 F.2d 991, 993 (5th Cir.), cert. denied 449 U.S. 857 (1980). Based on a thorough review of the records and files, the Court finds the petitioner is entitled to no relief and thus a full evidentiary hearing would serve no useful purpose. United States v. Robinson, 585 F.2d 274, 280 (7th Cir.), cert. denied, 441 U.S. 947 (1979); Harshaw v. United States, 542 F.2d 455, 457 (8th Cir. 1976).

---

[19] The essential features enunciated by Williams were:

"the interposition between the accused and his accuser of the common-sense judgment of a group of laymen, and in the community participation and shared responsibility which results from that group's determination of guilt or innocence," necessitating only a group "large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross section of the community."

## V. CONCLUSION

In view of the foregoing, petitioner's Section 2255 Motion is hereby DENIED.

## ORDER

For the reasons expressed in the Memorandum Opinion filed herein on even date herewith, it is

ORDERED that defendant's Motion To Vacate, Set Aside or Correct Sentence be, and the same hereby is, DENIED.