GOVERNMENT OF the VIRGIN
ISLANDS, Plaintiff,

v.

Connie NICHOLAS, Defendant.

Crim. No. 81–36.

District Court, Virgin Islands,
D. St. Croix.

June 26, 1986.

James W. Diehm, U.S. Atty., Christiansted, St. Croix, U.S.V.I., for plaintiff.

John F. McMahon, Acting Federal Public Defender, Michael A. Joseph, Sp. Asst., Christiansted, St. Croix, U.S.V.I., for defendant.

## MEMORANDUM OPINION

SILVERLIGHT, District Judge, Sitting by Designation.

This matter came before the Court on remand from the Third Circuit Court of Appeals after which an evidentiary hearing was conducted on defendant's motion pursuant to 28 U.S.C. § 2255 wherein he claimed an abridgment of his Sixth Amendment right to effective assistance of counsel, 759 F.2d 1073. For the reasons set forth below, defendant's motion shall be denied.

The factual background of this case has been set forth in a litany of prior cases, to wit:

*Government of the Virgin Islands v. Nicholas,* No. 81–2373 (3d Cir.1982) 707 F.2d 1391; *Government of the Virgin Islands v. Nicholas,* Crim No. 36–1981 (D.V.I. St. Croix, August 17, 1983) 20 V.I. 179 and *Government of the Virgin Islands v. Nicholas,* 759 F.2d 1073 (3d Cir.1985).

Suffice to say that in July, 1981, defendant, Connie Nicholas, (hereinafter "Nicholas") was convicted on counts of Murder First Degree, Assault First Degree, Grand Larceny and Possession of an Unlicensed Firearm during the commission of a crime of violence.

On defendant's first appeal, the Court of Appeals vacated his conviction on the charge of Murder First Degree while affirming his conviction on all other charges, and remanded the case for an entry of judgment of conviction of Second Degree Murder, and for resentencing on the murder count. Sometime thereafter, defendant filed a Motion to Vacate and Set Aside his sentence pursuant to 28 U.S.C. Section 2255. In said motion, defendant alleged, *inter alia*, that he was denied his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to object to certain testimony and to obtain a spectographic voice analysis of an incriminating tape recording. This Court denied defendant's motion. On appeal, the Circuit Court remanded the case to this Court with instructions to conduct an evidentiary hearing on defendant's claim of ineffective assistance of counsel.

The issue before the Court at the evidentiary hearing held on February 26, 1986, pursuant to the instructions of the Circuit Court, was whether trial counsel performed in a constitutionally inadequate fashion [1] as a result of (a) his failure to object to the testimony of one Detective Petersen, regarding an incriminating taped conversation between an informant (hereinafter "Wagner") and a person whom Petersen assumed to have been the defendant; and (b) whether trial counsel should have secured a spectrographic voice analysis of the aforementioned tape.

## FACTS

The testimony adduced at the hearing, established, and the Court finds, that after having been assigned to defendant's case, but prior to the trial of the matter, trial

counsel, George Alexis (hereinafter "Alexis"), commenced an independent investigation of the crimes in question.[2] He learned that a fingerprint, purporting to be that of the defendant, had been lifted from the rear view mirror of the automobile which was involved in the incident. Thereafter, and without the knowledge of the government, he retained an independent fingerprint expert to determine whether the aforementioned latent fingerprint, in fact, matched that of the defendant.

At or about the same time, and during the course of pretrial discovery, Alexis also learned of the existence of a tape recording wherein defendant allegedly confessed the commission of the crimes charged to a government informant who was wearing a recorder. Consequently, Alexis moved for and was granted a continuance of the trial date to allow the conduct by an expert, of a spectrographic voice analysis [3] of the tape.

Defendant was then informed by counsel that an exemplar tape would have to be made for comparison with the original. Alexis explained to defendant, in accord with the instructions of his expert, that a transcript of the contents of the recording would have to be made and that defendant would, after rehearsal, then have to recite the contents of the transcript so that the exemplar duplicate together with the original could be sent to the expert for the requisite analysis.

While listening to the tape for the purpose of preparing the transcript, Neville Burke, counsel's investigator, concluded that the voice on the tape sounded quite similar to defendant's voice. Furthermore, during the rehearsal for the preparation of the exemplar, defendant also apparently recognized the similarity of voice because

1. See fn 2, infra.

2. George Alexis is an attorney with substantial criminal trial experience, including almost twenty years with various Public Defender and Legal Aid offices. His background entails having handled (1) between fifty to seventy-five major felony cases while working as a senior attorney at the Legal Aid Office in New York; (2) a substantial number of major felony trials while employed as a senior trial attorney in Washington, D.C.; (3) between forty to seventy-five major felony cases while employed as the Federal Public Defender in the Virgin Islands; and (4) about forty major felony cases during his current employment with the Legal Aid Defense Division in New York.

3. In this jurisdiction, the admission in evidence of spectrographic voice analysis has never been approved, even to the date of this writing.

he then refused to make the exemplar tape. This was reported by Burke to Alexis, who upon an independent review of the tape, also noted the similarity of voice. This Court specifically finds that due to defendant's own actions, or more appropriately, his inaction, no exemplar tape was ever made by the defendant.[4]

In the course of this same time period, Alexis received a report from his fingerprint expert indicating that the latent fingerprint lifted by the police from the victim's automobile and the ink fingerprint of the defendant matched. Coincidentally, the government, at the same time volunteered the information that it would not offer to introduce the aforementioned tape into evidence. This information was conveyed to Nicholas. When the Court was informed of the government's commitment not to offer the tape recording into evidence, because there no longer appeared to be any need for a voice analysis of the tape, the Court vacated its prior order granting continuance without contest by Alexis. The testimony of Alexis establishes that he believed that the voice on the tape was indeed that of his client, and that he decided that rather than draw any further attention to the tape by insisting that it be placed into evidence, he would attempt instead to discredit the testimony of the informant and any other witnesses for the government through vigorous cross-examination.

An additional factor in his decision to proceed to trial as rapidly as possible, according to his testimony, which the Court finds credible and worthy of belief, was the hope that the government had not yet learned that defendant's own expert had opined that the latent fingerprint found in the victim's vehicle was that of the defendant, knowing full well that this finding could have been elicited at trial.

4. The defendant claims that a duplicate tape was completed. On the contrary, Burke and Alexis testified that while the defendant did rehearse his role with Burke, he thereafter appeared nervous and refused to make the actual exemplar. The Court accepts the testimony of

## DISCUSSION

When a convicted defendant complains of the ineffectiveness of counsel's performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). He must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 2066. The Court must then determine whether "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 2068.

Nicholas avers that Alexis failed to render effective assistance of counsel by failing to obtain a spectrographic voice analysis of the incriminating tape. This Court concludes that the evidence adduced at the evidentiary hearing fails to support defendant's contention. The failure to obtain a spectrographic voice analysis was the direct result of defendant's refusal rather than the failure of trial counsel. Both Alexis and Burke testified that after listening to the incriminating tape and comparing the voice contained therein to that of the defendant, they believed that the voices were one and the same. Both further testified that it was the defendant who refused to make the exemplar. After having observed the demeanor of all the witnesses[5] and having considered any attendant bias on the part of each witness, the Court concludes that more probably than not, an exemplar was never made by the defendant as a result of his refusal. Accordingly, where, as here, the defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. *Strickland, supra* at 2066.

Burke and Alexis as the more credible version of what actually transpired.

5. Defendant's testimony was presented by video deposition which was admitted in evidence and presented to the Court.

■ Defendant next alleges that trial counsel should have objected to the testimony of Detective Petersen regarding the conversation contained on the aforementioned tape which he overheard through an electronic monitoring device while the conversation was being recorded. Again, the defendant has been unable to carry his burden of proof by a preponderance of the evidence. On the basis of the evidence presented at the evidentiary hearing, the Court finds that counsel's decision not to object to the testimony was a trial tactic.

In assessing whether trial counsel's omission fell outside the wide range of professionally competent assistance, the Court is mindful that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in a particular case. *Strickland v. Washington*, at 2066. At the same time, the Court recognizes that counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.*

Alexis testified that he believed the best course to take in defending Nicholas was to shift the jury's focus away from the tape and to concentrate instead on the credibility of the government's witnesses.[6] The Court finds this to have been a reasonable tactic in light of both Alexis' and Burke's conviction that the voice on the tape was that of the defendant. This finding is further buttressed by the defendant's nervous behavior and his subsequent refusal to make the exemplar. Hence, as explained by Alexis, any objection to the testimony of Petersen would have highlighted the purported tape which Alexis had deemed to be fatal to the defendant's case. Moreover, since the informant was the only one who could identify the defendant as the person with whom he had spoken, Alexis properly chose to attack his credibility through vigorous cross-examination.[7] In addition, Alexis believed that there was little ground upon which to object to the testimony since Wagner already had testified as to his personal knowledge of the conversation and had identified the defendant as the speaker. Hence, Petersen's testimony was at most, merely cumulative.

In summary, after having considered all of the factors indicated above, in conjunction with the trial counsel's extensive criminal trial experience, the Court finds that Alexis' decision to attack the credibility of the government's witnesses and to eliminate or minimize any reference to the incriminating tape, was a sound and reasonable trial strategy. Hence, the defendant was not denied his Sixth Amendment right to effective assistance of counsel.

## PREJUDICE

■ Even assuming *arguendo* that counsel's performance fell below an objective level of reasonableness, defendant's motion would still fail. In order to show that the defendant was prejudiced by counsel's errors, Nicholas would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, at 2068.

In this instance, the evidence against the defendant was overwhelming. His fingerprint was found on the rear view mirror of the victim's vehicle; he confessed to the crimes in question to an informant who testified and was vigorously cross-examined; and the bullet which killed the victim was traced to a gun which had been given by the defendant to the informant.

Furthermore, this strategy was but one of a number of sound methods which could have been employed in the defense of this case in light of the other incriminating evidence against the defendant. (Testimony of the government's expert, Gordon Rhea, Esquire); *see* DISCUSSION, *supra* at p. 9.

---

**6.** The government honored its commitment concerning the use of the tape by declining to offer it in evidence.

**7.** This trial tactic was particularly reasonable in light of Wagner's admission that he (1) was a paid informant; and (2) had lied previously. Hence, under the circumstances, he was a highly impeachable witness.

In accordance with the foregoing, the Court concludes that even without the testimony of Petersen and without the spectrographic voice analysis of the tape, the evidence against this defendant was so overwhelming, that the result of the proceeding would not have been different.